**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 19 CR 864 |
| vs. | Hon. Thomas M. Durkin |
| | United States District Judge |
| RISHI SHAH, SHRADHA AGARWAL, | |
| and BRAD PURDY | |

**DEFENDANTS' PRETRIAL BRIEF TO LIMIT PRE-2014 EVIDENCE AS OUTSIDE THE STATUTE OF LIMITATIONS, UNDULY PREJUDICIAL, AND CUMULATIVE**

I.  **INTRODUCTION**

As set forth in Shah and Agarwal's Joint Response to the Government's *Santiago* Proffer (Dkt. 309), Defendants' request for a theory-of-defense instruction on "SCHEME TO DEFRAUD – MULTIPLE SCHEMES" (Dkt. 313 at 21), and Defendants' Motion for Standing Objection (Dkt. 337), a central tenet of the defense is that the Government will fail to prove that Mr. Shah, Ms. Agarwal, and Mr. Purdy knowingly devised or participated in the single overarching scheme to defraud pharmaceutical clients, lenders, and investors charged in the Superseding Indictment from 2011 through 2017. Against this background, and now having analyzed the Government's exhibit list, Defendants file this pretrial brief to alert the Court to significant related evidentiary challenges which they anticipate making to the Government's voluminous pre-2014 evidence of conduct that would be barred by the statute of limitations, absent the construct of a single overarching scheme. As set forth below, the contemplated pre-

2014 evidence is grossly disproportionate to the post-2014 evidence, and as such, violates Rules 403 and 404 of the Federal Rules of Evidence.

## II. BACKGROUND

The grand jury returned its indictment against Rishi Shah, Shradha Agarwal, and Brad Purdy (collectively, the "Defendants") on November 21, 2019, charging a single overarching scheme to defraud pharmaceutical clients, lenders, and investors that began in 2011 and continued to 2017. Because the statute of limitations for mail and wire fraud provides for a five year limitations period that "begins running on the date of the mailing," *see United States v. Barger*, 178 F.3d 844, 847 (7th Cir. 1999); *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002) (applying the same to wire fraud), the fraud counts charge executions of the 2011-2017 scheme beginning February 2, 2015—including executions that relate to five pharmaceutical campaigns out of the 165 campaigns the Government represents are at issue. *See* Dkt. 14 (Counts 2, 4, 11, 23, 25); Dkt. 326 (Government's Campaign List).

Within this limitations period, the evidence regarding the Defendants' involvement is weak: by 2015, none of the Defendants were directly involved in negotiating, executing, or implementing contracts with pharmaceutical companies, and it is undisputed that Ashik Desai was perpetrating fraud on the company's clients. Indeed, the Government's Exhibit List makes clear that the overwhelming focus of the Government's case against the Defendants as to the alleged pharmaceutical fraud is conduct that could not be charged as a mail or wire fraud count because it is outside the statute of limitations: Over 400 of the Government's exhibits related to the alleged pharmaceutical fraud pre-date November 2014—the time period falling outside of the statute of limitations.

The Government's exhibits also confirm that there is a stark difference in the conduct before Desai and after Desai— who has admitted to hiding a core aspect of the fraud from Defendants, lying to Defendants about the fraud, and destroying evidence when the Wall Street Journal exposed his conduct—such that the conduct cannot be said to be part of a single unitary scheme charged in the Superseding Indictment. Consistent with Desai's admission under oath that he "did not tell Rishi Shah or others that [he] was changing the numbers in ROI reports," the Government's exhibits show Desai spearheading an entirely distinct scheme of his own. Desai GJ Tx. 38:4-6. Defendants' time-barred pre-2014 practices are categorically different from Desai's crimes. *Compare* GX-15 (Shah in 2012 openly discussing the best methodology for selecting a control group for an ROI study with three-unindicted Outcome employees) *with* GX-795 (Outcome employee in 2017 raising concern that ROI results from IMS had been secretly altered before they were shared with client); *see also* Dkt. 309 at 20-21.

The Government's tack is clear: they invoke the construct of a single scheme to side-step the statute of limitations and avoid the strictures of Federal Rule of Evidence 404. Compared to the over 400 pharmaceutical fraud related exhibits from the time barred period, fewer than 150 of the government's exhibits are substantive communications related to the in-statute campaigns. Of these, the overwhelming majority of the communications are communications from 2015 or later—a period where none of the Defendants was directly involved in negotiating, executing, or implementing contracts with pharmaceutical companies. For example, of the exhibits from the time-barred period, over 121 are related to Pradaxa, a campaign that is not charged in any indictment count. The Government's list includes another approximately 80 pre-2014 exhibits relating to two Novo Nordisk campaigns that also are not charged counts. In contrast, the Government has approximately 27 exhibits related to Jardiance, a campaign charged in Count 11

of the indictment, and 21 exhibits related to Belsomra, a campaign charged in Count 23 of the indictment.

III.     **ARGUMENT**

The sheer, disproportionate weight of this early evidence would lead to unfair prejudice and confusion of the issues; exposes the jury to the danger of considering that proof for improper purposes; and would shift the jury's focus from deciding the ultimate issue in the case: whether Defendants knowingly participated in the single overarching scheme alleged—not a different, time-barred scheme pre-2014. As such, it violates Rules 403 and 404, and should be limited.

Mail and wire fraud carry a five-year statute of limitations. *United States v. Barger*, 178 F.3d 844, 847 (7th Cir. 1999); *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002). This limitations period "begins running on the date of the mailing," *Barger*, 178 F.3d at 847, and is "liberally interpreted in favor of repose," in order to "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past," *Toussie v. United States*, 397 U.S. 112, 115 (1970); *United States v. Smairat*, 2006 WL 1554412, at *6 (N.D. Ill. June 1, 2006) (For purposes of the statute of limitations, wire fraud "is not a continuing offense; it occurs on the day of the wire.") (*citing Barger*, 178 F.3d at 847). While evidence of limitations-barred conduct may in some circumstances be relevant to show that defendants intentionally participated in a scheme to defraud within the limitations period, *see Tadros*, 310 F.3d at 1007, n.5,[1] that assumes the conduct is part of the *same* scheme to

---

[1] *Tadros,* for instance, concerned a *single* defendant engaging in one course of fraudulent conduct before and after the statute of limitations—not, as here, a clear demarcation between many different campaigns, with several distinct categories of fraudulent practices, and involving different participants before the statute of limitations (e.g., Defendants) versus after (e.g., Desai).

defraud, which the Government's evidence is not. As evidence of a separate scheme, it is, instead, quintessential propensity evidence, and more prejudicial than probative in this case. *See United States v. Morgan*, 929 F.3d 411, 427 (7th Cir. 2019) ("[A] court may not allow in evidence of prior acts to show that the defendant is 'the kind of person who would do such a thing.'").

It is not enough for the Government to argue that there is a non-propensity purpose for this other evidence. *See United States v. Miller,* 673 F.3d 688, 696 (7th Cir. 2012) ("Rule 404(b) does not provide a rule of automatic admission whenever bad acts evidence can be plausibly linked to 'another purpose,' such as knowledge or intent."). A court may exclude evidence of probative value if its introduction would lead to "unfair prejudice or confusion of the issues." Fed. R. Evid. 403. For instance, courts can preclude a party from proffering evidence when that evidence would "expose the jury to the danger of considering that proof for improper purposes." *Cleveland v. Cleveland Electric Illuminating Co.,* 734 F.2d 1157, 1164 (6th Cir. 1984). Courts also preclude the admission of evidence if it would "shift the jury's focus from deciding the ultimate issue in the case," *Walker v. NationsBank N.A.*, 53 F.3d 1548, 1554-55 (11th Cir. 1995), and "would confuse and mislead the jury by focusing its attention on collateral issues," *United States v. Bowe,* 360 F.2d 1, 15 (2d Cir. 1966) (citations omitted). All of these risks exist here.

The overwhelming quantum of early evidence risks the jury concluding that the Defendants are being tried for that conduct, *regardless of whether or not the jury believes that the pre-2014 conduct is proof of the Defendants participation in the single overarching scheme alleged in the charged counts*. There is a severe risk of prejudice given that the early evidence is also evidence of a purported false representations made to pharmaceutical clients—but what is, at best, a time-barred scheme distinct from the charged scheme. *See United States v. Jenkins,*

593 F.3d 480, 486 (6th Cir. 2010) ("When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact."). Accordingly, the Court can and should restrict the disproportionate introduction of pre-2014 evidence to prevent the cumulative prejudice of such evidence from substantially outweighing its probative value. *United States v. Boros*, 668 F.3d 901, 910 (7th Cir. 2012) ("Evidence bearing minimal probative value is admissible only if it bears a remote risk of prejudice."); *see also United States v. Gerard,* 926 F. Supp. 1351, 1365 (N.D. Ill. 1996), aff'd, 129 F.3d 119 (7th Cir. 1997) (denying government's motion to introduce evidence of prior acts that were "too dissimilar to the charged conduct to be relevant," and where "the danger of [the] improper use of the evidence . . . substantially outweighs its very minimal probative value.").

## IV.     CONCLUSION

Accordingly, for the foregoing reasons, if the Government does not restrict the number of pre-2014 exhibits it seeks to introduce at trial, Defendants anticipate raising objections to those exhibits as they are moved into evidence, before they come to constitute an unduly disproportionate volume of evidence.

Dated:  January 19, 2023            Respectfully submitted,

                                    HUESTON HENNIGAN LLP


                                    By:  */s/ Vicki Chou*
                                         Vicki Chou
                                         John C. Hueston
                                         Michael Todisco
                                         Karen Ding
                                         Attorneys for Defendant
                                         Rishi Shah

Dated: January 19, 2023				Respectfully submitted,

							LARSON LLP


							By:	*/s/ Koren Bell*
								Stephen G. Larson
								Koren Bell
								A. Alexander Lowder
								Attorneys for Defendant
								Shradha Agarwal

Dated: January 19, 2023				Respectfully submitted,

							BLEGEN & GARVEY


							By:	*/s/ Patrick W. Blegen*
								Patrick W. Blegen
								Attorneys for Defendant
								Shradha Agarwal

Dated: January 19, 2023				Respectfully submitted,

							COTSIRILOS, TIGHE, STREICKER, POULOS & CAMPBELL, LTD.


							By:	*/s/ Theodore Thomas Poulos*
								Theodore T. Poulos
								Eric S. Pruitt
								John N. Pavletic, Jr.
								Attorneys for Defendant
								Brad Purdy