UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 864 |
| v. | |
| | Hon. Thomas M. Durkin |
| RISHI SHAH, | United States District Judge |
| SHRADHA AGARWAL, and | |
| BRAD PURDY | |

**GOVERNMENT'S RESPONSE
TO DEFENDANTS' BRIEF TO LIMIT PRE-2014 EVIDENCE**

## I.  INTRODUCTION

In moving to exclude or limit evidence pre-dating 2014, defendants argue in a circle. First, they presume that the indictment charges multiple schemes, rather than a single scheme to defraud. Next, defendants contend that pre-2014 evidence must be barred because it: (1) concerns acts falling outside the five-year statute of limitations for mail and wire fraud; or (2) constitutes "other act" evidence, insofar as the pre-2014 evidence purportedly relates to a separate scheme than the post-2014 conduct in the indictment. These claims run headlong into the Court's ruling, in its *Santiago* order, that the indictment—contrary to defendants' belief—charges a "single, cohesive joint venture" to defraud the clients, lenders, and investors of Outcome Health. Failing to address, much less rebut, the Court's well-reasoned findings, defendants forge ahead.

To that end, while suggesting that the government should "restrict" the pre-2014 evidence it offers at trial (ECF 343 at 6), defendants do not explain how many pre-2014 exhibits they would deem acceptable, let alone discuss any specific pre-2014 exhibits. Instead, they tally up exhibit counts and complain that the government has

identified about 150 exhibits related to pharma fraud dated November 2014 or later, while listing a greater volume of pharma-fraud exhibits that pre-date November 2014. (*Id.* at 3.) Defendants then request that the Court simply exclude *all* pre-2014 evidence under Rules 403 and 404(b) because it is "grossly disproportionate" to the post-2014 evidence. (*id.* at 2.) and "would be barred by the statute of limitations" absent what they argue is the "construct" of a single scheme. (*Id.*) The Court should reject defendants' motion, which mischaracterizes the allegations in this case and has no support in the law.

## II. THE INDICTMENT ALLEGES AND THE EVIDENCE ESTABLISHES A SINGLE SCHEME TO DEFRAUD.

This case involves the executives at the same company, working together over a number of years to grow their company and its revenue by committing fraud. Despite this, defendants simply repeat their refrain that the government has charged multiple schemes rather than one scheme. Remarkably, defendants neither cite a single fraud case that supports their multiple-scheme claim, nor address the Court's rejection of their position in its ruling on the *Santiago* proffer. As the Court explained,

> [T]he government has not, as Shah and Agarwal assert, described separate, narrower schemes. It is not difficult to see how the evidence connects to reveal a single, cohesive joint venture. This case is focused on a single company, indeed a set of executives at that single company. All actions taken were, at least on their face, assumed to be in the interest of that single company making money, whether through sales, loans, or investments. And all of the Defendants and other co-venturers had an incentive to maximize revenue, either by virtue of their roles in the company or, in the case of Shah and Agarwal, their ownership interests. That the Defendants point the finger at Ashik Desai as the purported mastermind of the fraud does not change the calculus. By way of comparison, this is not a case where one individual runs a cocaine ring or some other unrelated criminal enterprise while sitting in his employer's office or using his employer's phones. The scheme alleged is

2

> one by executives and employees to defraud the clients, lenders, and investors of Outcome Health through and in an effort to further the success of the business. There was no separate side-scheme, just different roles by its participants and different ways at various times to further the interests of the joint venture.

(ECF 332 at 6-7.) The Court's findings are consistent with the anticipated evidence at trial and common sense. Even though their brief is premised on a contrary view, defendants did not even attempt to offer any evidence or law to counter the Court's conclusion. And without the foundational premise—which defendants simply assume to be true—that pre-2014 evidence relates to different schemes than the post-2014 conduct alleged in the indictment, the remaining arguments in their motion fall flat.

## III. THE PRE-2014 EVIDENCE IS NOT "OTHER ACTS" EVIDENCE, AND AS DIRECT EVIDENCE OF THE CHARGED SCHEME, IS NOT UNDULY PREJUDICIAL.

The superseding indictment alleges that the charged scheme continued from 2011 through at least 2017. (ECF 14 at 6.) Even though defendants' pre-2014 conduct falls squarely within the timeframe of the charged scheme, defendants appear to contend that scheme evidence falling outside the five-year statute of limitations for wire and mail fraud (which would be a November 2014 cutoff, given the November 2019 indictment date) amounts to "other acts" evidence and must satisfy Rule 404(b).[1] (ECF 343 at 4-7.) That is simply not the law. "Rule 404(b) does not apply to direct evidence of the crime charged." *United States v. Ferrell*, 816 F.3d 433, 443 (7th Cir.

---

[1] Defendants apparently forget that they are also each charged with two counts of bank fraud (*see* ECF 14, Counts Nine and Thirteen), which has a ten-year statute of limitations. 18 U.S.C. § 3293. In this case, the bank-fraud limitations period relates back to November 2009, before defendants' preferred 2014 cut-off date and the start of the scheme period charged in the indictment.

2015); *see also United States v. Volpentesta*, No. 14 C 50343, 2015 WL 4545215, at *10 (N.D. Ill. July 25, 2015) (finding "Rule 404(b)" does not reach "direct evidence of the charged scheme to defraud. Evidence of the scheme to defraud is not limited to the particular executions of the scheme alleged in the indictment."). And as the Seventh Circuit has long held, evidence outside the applicable limitations period can be "highly relevant to the existence of the very same scheme to defraud" that the underlying mails or wires were alleged to have furthered. *United States v. Wellman*, 830 F.2d 1453, 1464 (7th Cir. 1987).

Indeed, defendants' reasoning has been roundly rejected by the Seventh Circuit. For example, in *United States v. Lanas*, 324 F.3d 894, 900-01 (7th Cir. 2003), the Court ruled that evidence relating to the fraud scheme other than the charged mailings "was not Rule 404(b) evidence at all but was properly admitted as proof of that overall scheme." As the Court observed:

> The defendants' argument appears to be based on their belief that the scope of a mail fraud scheme is limited by the mailings that are specifically charged in the indictment; so in this case, since the indictment only charged mailings to [certain individuals], the offense is limited to the portion of the scheme pertaining to them alone. This is wrong, however, because a mailing in furtherance of a scheme to defraud is simply the element that confers federal jurisdiction under the mail fraud statute; but a fraud scheme can produce proceeds long before the act that ultimately triggers jurisdiction.

*Id.* at 901.

A similar theory was rejected in *United States v. Boone*, 628 F.3d 927 (7th Cir. 2010), where the defendant claimed that incidents occurring after the charged mailings should not have been admitted. Again, the Court explained:

4

> The government must prove both the existence of a scheme and that there was a mailing in furtherance of that scheme. The mailing is a jurisdictional prerequisite which must be satisfied in order to invoke federal criminal prosecution, but it does not constitute an endpoint beyond which the government may not provide evidence of the scheme. The government is entitled to establish the scheme and can rely on evidence that occurred before and after the mailing in order to do so.

*Id.* at 935; *see also United States v. Longfellow*, 43 F.3d 318, 322-25 (7th Cir. 1994) ("only one or two executions fell within the Statute of Limitations [but that] does not detract from the entire pattern of loans' being a scheme, and renders [the defendant] no less culpable for the entire scheme.").

As *Boone* emphasized, the limiting principle for scheme evidence lies with Rule 403, not 404(b). Such an analysis focuses on the timing of the evidence and how much it bears on the defendant's involvement. *See id.* ("As evidence regarding the scheme moves farther, both temporally and in terms of the defendant's involvement, from the defendant's actions that form the crux of the criminal claim, that balance may well tip in favor of exclusion.").

Applying those principles, the evidence at issue plainly falls within the charged scheme and should not be excluded. The pre-2014 evidence regarding the fraud on Outcome's pharma clients is focused squarely on Shah, Agarwal and Purdy. In public filings in this case, defendants have acknowledged that a massive fraud occurred at Outcome, but claimed that they did not know about it and that Ashik Desai and his underlings are to blame for the fraud. Desai did not start working at Outcome until August 2013, after the scheme alleged in the indictment was already underway. Given that the heart of the defense is to disclaim knowledge and blame Desai, the

5

evidence of defendants' involvement in the fraud scheme that predates Desai's arrival is critical. And the pre-2014 evidence is devastating. Contemporaneous documents establish that Shah and Agarwal created and implemented Outcome's fraudulent business practices before Desai ever started at the company and taught him Outcome's deceptive ways during the first weeks and months of his employment. The pre-2014 evidence (along with post-2014 evidence) proves that defendants were knowing participants in the fraud and undercuts the claim that the fraud was Desai's brainchild.

Even though, as set forth above, the law in the Seventh Circuit on these issues is well-established, defendants did not address the relevant case law in their brief. Instead, they rely on Rule 404(b) discussions in drug and gun cases with no factual or legal relevance to this corporate-fraud case—along with a wholly irrelevant Second Circuit case from more than 50 years ago involving a plot to blow up the Statue of Liberty. *See, e.g., United States v. Morgan,* 929 F.3d 411, 427 (7th Cir. 2019) (affirming admission of Rule 404(b) evidence in drug case); *United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012) (reversing conviction in drug and gun case due to improper admission of defendant's prior drug conviction under Rule 404(b)); *United States v. Jenkins*, 593 F.3d 480, 485 (6th Cir. 2010) (same); *United States v. Bowe*, 360 F.2d 1, 14-15 (2d Cir. 1966) (affirming exclusion of proposed impeachment of undercover officer with testimony that he had previously asked another individual to participate in plan to blow up the Statue of Liberty in case involving conspiracy to destroy national monuments, including Statue of Liberty).

After citing the irrelevant cases referenced above, defendants assert that the pre-2014 evidence would lead to unfair prejudice and confusion of the issues. Much like their approach in responding to the government's *Santiago* proffer, defendants do not discuss any specific pre-2014 evidence. Instead, they claim the "overwhelming quantum" and "disproportionate" nature of the pre-2014 evidence will lead to unfair prejudice and confusion (ECF at 5), without any real analysis of the evidence. Merely counting exhibits, as defendants do, is about as meaningful as counting witnesses. Sometimes a single document or a single witness can prove devastating. Other times, dozens of documents are required to prove a single proposition. And courts in the Seventh Circuit wisely instruct juries not to simply count witnesses: "Do not make any decisions by simply counting the number of witnesses who testified about a certain point. What is important is how believable the witnesses are and how much weight you think their testimony deserves." (*See* ECF No. 303, Joint Proposed Prelim. Instruction No. 8 (citing 7th Circuit Pattern Criminal Jury Instructions, at 15 (2022 ed.)).

Defendants boldly argue that "regardless of whether or not the jury believes that the pre-2014 conduct is proof of the Defendants participation in the single overarching scheme alleged in the charged counts," it should still be excluded. (ECF 343, at 5.) That contention defies common sense. Defendants argue, straight-faced, that *direct* evidence of their knowing participation in a scheme to defraud should be *excluded*, because it "risks the jury concluding that Defendants are being tried for that conduct[.]" Yet, defendants *are* being tried for that conduct. As part of its proof

at trial, the government must prove, beyond a reasonable doubt, that each defendant "knowingly devised or participated in a scheme to defraud, as described in Count One," which alleges a scheme spanning between 2011 and 2017. (*See* ECF No. 303, Joint Proposed Prelim. Instruction Nos. 10 (citing 7th Circuit Pattern Criminal Jury Instructions, at 611 (2022 ed.)). "'It is axiomatic that all relevant evidence bearing on the guilt of the defendant[s]"—including evidence of their pre-2014 conduct—"is inherently prejudicial.'" *United States v. Guyton*, 36 F.3d 655, 660 (7th Cir. 1994). That does not, however, make it excludable: "When balancing prejudice against probative value, it is important to keep in mind that all relevant evidence is prejudicial and that evidence must be *unfairly* prejudicial in order for it to be inadmissible under [Rule 403]." *United States v. Howard*, 692 F.3d 697, 707 (7th Cir. 2012; emphasis in original).

Simply put, the Court should reject defendants' undeveloped and inaccurate claims of unfair prejudice and confusion of the issues.

## IV.    CONCLUSION

For these reasons, the Court should deny the relief requested in Defendants'

Pretrial Brief to Limit Pre-2014 Evidence.

<div style="margin-left: 40%;">

Respectfully submitted,

MORRIS PASQUAL
Attorney for the United States Acting under Authority Conferred by 28 U.S.C. § 515

By:    _s/ Matthew F. Madden_
Matthew F. Madden
Saurish Appleby-Bhattacharjee
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 469–6045

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By:    _s/ William E. Johnston_
William E. Johnston
Kyle C. Hankey
Assistant Chiefs
1400 New York Ave NW
Washington, D.C. 20530

</div>

Dated: January 23, 2023