UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 19 CR 864 |
| ) | |
| RISHI SHAH, ) | |
| SHRADHA AGARWAL, and ) | Judge Thomas M. Durkin |
| BRAD PURDY ) | |
| ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO MOTION TO CONTINUE SENTENCING**

Defendant Rishi Shah's quest to avoid and delay accountability continues. Seven months ago, a jury convicted him of 19 counts of mail fraud, wire fraud, bank fraud, and money laundering. R. 447. The probation officer recently concluded that Shah's offense conduct resulted in a sentencing guideline range of life imprisonment, though the range was modified to a term of 4,560 months (380 years) due to the statutorily authorized maximum sentences for the counts of conviction. Shah PSR at 25. Shah remains on bond, splitting time between Miami and his multi-million dollar residences in Puerto Rico and Chicago. *Id*. at 21. At a hearing last week, Shah's counsel advised the Court that Shah intended to move to continue the December 5, 2023 sentencing, explaining he "might call" one expert witness. The Court indicated that it was not inclined to continue the sentencing date. The Court noted that sentencing was still five weeks away, and that it could hold Shah's sentencing over two days if warranted, including both December 5 and December 6.

Shah then filed the present written motion. He seeks to kick his sentencing—and thereby delay imposition of the anticipated sentence of imprisonment and the restitution order—by approximately 60 days, into February 2024. In his motion, Shah did not address the interests of

1

the dozens of victims of his billion dollar fraud. Nor did he mention that when it set the sentencing for December 5, the Court made it clear to all parties that it was a firm date, emphasizing that Shah would be sentenced on that date. Instead, Shah claims the two large, international law firms that currently represent him do not have sufficient time to prepare for this one-witness sentencing. The Court should deny the motion.

Shah has had plenty of time to prepare for the sentencing. The Court initially set Shah's sentencing for October 13, 2023, which was more than six months after the jury verdict. R. 455. The initial sentencing date in October was eminently reasonable, and set further out than usual in this district due to the complexity of the case. On September 21, 2023, on its own motion, the Court continued Shah's sentencing by eight weeks, to the current date of December 6, 2023. R. 540.[1] Thus, Shah has already had the benefit of more time to prepare for sentencing than anticipated, with the sentencing now set for nearly eight months after trial. And the sentencing is still five weeks out. The idea that attorneys of the caliber and experience of Mr. Burck, Mr. Finneran and Mr. Glozman (and their partners and associates) cannot complete preparation for this sentencing by December 5, 2023 is hard to take seriously.

The Court should reject Shah's predictable attempts to blame the government. As the Court knows, Shah has a penchant for blaming others. During the fraud scheme, he attacked and marginalized the whistleblowers. At trial, Shah and his co-schemers pointed the finger at Ashik Desai. At various times during this prosecution, Shah has taken aim at the government, including

---

[1] Shah makes a feeble attempt to lay the continuance of the sentencing date at the feet of the government. R. 565 at 2 (asserting the sentencing date was continued "as a result of those extensions [among other things]" which he claimed were "generally at the initiative of the Government"). First, the Court continued the sentencing date *sua sponte*, and did not attribute the continuance to the government. Second, delay has been an obvious part of Shah's post-trial strategy. He slow played the litigation on the motion for a preliminary order of forfeiture in order to delay entry of that order. As for sentencing, the only question was when he'd file a motion to continue the sentencing date, along with what he'd cite as a basis and how much additional time he'd request.

his misguided post-trial attack on an FBI accountant. In his latest motion, he claims that the government submitted its version of the offense late—too late for the two 1,000+ attorney law firms representing him (along with Mr. Glozman) to prepare for sentencing.

Shah and his attorneys have had and will have had plenty of time to digest the government's version of the offense and prepare for sentencing. First, on July 31, 2023—a deadline set by the Court, which is now more than four months prior to sentencing—the government submitted a 43-page government's version. The submission set out the government's version of the facts, as supported by trial evidence and the jury's verdict; the government's sentencing guideline calculation; and a victim impact statement. The guideline calculation from the July 31, 2023 government's version is set forth here:

| | |
|---|---|
| Base Offense Level (§ 2B1.1(a)(1)) | 7 |
| Loss more than $250 million (§ 2B1.1(b)(1)(O)) | +28 |
| More than 10 victims (§ 2B1.1(b)(2)(A)(i)) | +2 |
| Sophisticated means (§ 2B1.1(b)(10)(C)) | +2 |
| More than $1 million from financial institutions (§ 2B1.1(b)(17)) | +2 |
| Leader/organizer | +4 |
| | |
| **TOTAL** | **45**[2] |

GV at 42. The July 31 submission also provided evidentiary and legal support for the guideline enhancements for (1) more than 10 victims; (2) sophisticated means; (3) more than $1 million from financial institutions; and (4) role in the offense. *Id*. at 17-42. As for amount of loss, the government asserted that the loss was between $250,000,000 and $550,000,000, and noted that it would submit a supplement to the government's version in support of that enhancement. *Id*. at 18.

---

[2] Under Application Note 2 to the Sentencing Table in Chapter 5, an offense level of more than 43 is to be treated as an offense level of 43. GV at 43. An offense level of 43 leads to a guidelines range of life imprisonment regardless of the criminal history category.

3

More than three months prior to the current sentencing date, on September 1, 2023, the government submitted a supplement regarding amount of loss. In the 13-page supplement, the government set out its position on the amount of loss suffered by investors and clients. As reflected in the supplement, and as all the parties have known for years, the fraud against the investors is the biggest driver of loss[3] in the case. Supp. GV at 8. The investors lost at least approximately 90% of the $487.5 million invested in Outcome. *Id*. at 11. Using conservative assumptions, the client losses amounted to approximately $48.4 million. *Id*. at 8. In the supplement, the government explained that it was still analyzing the lender loss, and would submit a supplement on that issue, but noted that the loss would not be greater than $63 million, which was the number needed to bump the total loss from the $250-$550 million range to the $550+ million level. *Id*. at 11.

On October 19, 2023, the government submitted a second supplement to the government's version. Over three pages, the government set forth its position on lender loss, which amounts to approximately $25.6 million. Second Supp. GV at 3. Combining the lender loss with the losses to investors and clients, the total amount of loss is approximately $522,722,125. *Id*. at 9. The balance of the nine-page second supplement addressed restitution.

Shah complains that the government's submission of its position on loss was "nearly three months late." R. 565 at 1. He ignores the fact that the government submitted a 40+ page government's version on July 31, 2023, which covered nearly all of the issues. Further, nearly all of the loss stems from the fraud against the investors. And the defendants have had the government's position on the investor and client loss since September 1, more than three months

---

[3] Shah can hardly claim to be surprised by this. Outcome raised $487.5 million from investors. The investor victims testified at trial that they lost nearly all of the money they invested in Outcome. For example, Laela Sturdy, the managing partner at CapitalG, testified at trial that CapitalG's $50 million investment was worth "close to zero." Tr. at 8591, 8668. The government discussed this fact with the defense attorneys; it also highlighted the massive investor losses in court filings. *See, e.g.*, R. 473 at 3.

4

prior to sentencing. The investor and client losses amounted to 95% of the total loss. The lender loss does not make a significant practical difference for Shah; even if the lenders and clients suffered no losses, the defense would need to knock down the investor loss by nearly $200 million in order to make a difference under the guidelines by getting under the $250 million threshold.

As another basis for the continuance, Shah presumes the Court cannot manage its docket, suggesting that "[i]t is not feasible" for the Court to give consideration to and rule on pending motions prior to the December 5 sentencing, "especially given the demands of the many other matters on this Court's docket." R. 565 at 8. The government understands that the Court knows how to manage its own docket, and that it does not need the parties' advice on that topic.

The jury convicted Shah seven months ago. Consistent with the jury verdict, Shah should be held accountable for his actions. The motion should be denied.

Respectfully submitted,
MORRIS PASQUAL
Acting United States Attorney

By: *s/ Matthew F. Madden*
Matthew F. Madden
Assistant United States Attorney
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 886-2050

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: *s/ William E. Johnston*
William E. Johnston
Assistant Chief
1400 New York Ave NW
Washington, D.C. 20530