IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RISHI SHAH, et al.,<br><br>　　　　Defendants. | Case No. 19 CR 864<br><br>Judge Thomas M. Durkin |

**MOVANT RISHI SHAH'S PROFFER OF TOPICS OF
<u>INQUIRY COMMON TO PROPOSED GOVERNMENT WITNESSES</u>**

COMES NOW Movant Rishi Shah, pursuant to the Court's direction on April 9, 2024, and provides the following proffer of matters into which Mr. Shah would inquire, if permitted the opportunity to do so, of Government attorneys Matthew Madden, Will Johnston, Daniel Olinghouse, Kyle Hankey, and Saurish Appleby-Bhattacharjee (together, the "Government Attorneys") and Forensic Accountant Megan Poelking. Mr. Shah will also supplement this proffer to any additional topics that come to Mr. Shah's attention in advance of the continued hearing currently scheduled for May 9 and 10, 2024.[1]

Prior to making the instant submission, the undersigned asked counsel for the Government whether, in light of the Court's April 9, 2024 ruling, the Government still opposed Mr. Shah's request to call the Government Attorneys to testify. Counsel for the Government indicated that the Government continued to oppose any such request.

---

[1] The Government continues, despite the Court's recent ruling, to claim the right to withhold more than 100 of its communications under the work product doctrine, including communications involving Ms. Poelking and the Government Attorneys. Mr. Shah's counsel is scheduled to confer with counsel for the Government this Thursday, April 18 in an effort to resolve that dispute. Mr. Shah reserves the right to identify additional topics and bases for inquiry based upon any additional documents the Government may produce, whether voluntarily or upon order of the Court.

1

**PROPOSED TOPICS**

On April 9, 2024, this Court ordered the Government to produce to Mr. Shah several declarations previously submitted *ex parte* for the Court's review *in camera*. While those declarations have answered some of the questions that Mr. Shah had previously suggested he would propound to the Government Attorneys, they have left other questions unanswered and raised several more. Below, Mr. Shah explains generally why he requests live testimony from the Government Attorneys based upon the information received to date, along with a description of the topics that he would seek to inquire into.

### A. Communications with Third Parties

Most notably, the declarations do not provide any averments relating to the Government Attorneys' communications with third parties, including several entities that restrained untainted assets pursuant to this Court's Protective Order. Thus, at the very least, Mr. Shah should be permitted to call the Government Attorneys for the purpose of ascertaining the nature of their communications with those third parties, which are not even arguably subject to a claim of work product protection. Mr. Shah is aware that Mr. Madden previously had communications with such third parties, but the declarations do not attest to the absence of such communications by other Government Attorneys. As a result, Mr. Shah requests to call each of the Government Attorneys to inquire into that topic.

### B. Daniel Olinghouse

In addition, in light of the Court's determination that Mr. Shah has made a showing sufficient to overcome the Government's invocation of the work product doctrine, Mr. Shah should be permitted to inquire into the Government's internal discussion relating to the restraint of untainted assets in this case. Most significantly, Mr. Shah should be permitted to inquire of both

DOJ Attorney Daniel Olinghouse and FBI Forensic Accountant Megan Poelking as to their discussions in the course of preparing the forfeiture allegations for the Superseding Indictment in November 2019.

In particular, Mr. Olinghouse's declaration creates an apparent inconsistency with the documentary evidence produced by the Government and Ms. Poelking's testimony, making live witness testimony necessary to resolve the apparent contradiction. In his declaration, Mr. Olinghouse avers that, "[a]t the time the protective order was obtained" (i.e., November 22, 2019), he "was not aware that any portion of these investments was from a non-traceable source of funding or did not represent appreciation on invested proceeds." That statement appears to contradict an email Ms. Poelking sent to Mr. Olinghouse four days earlier, on November 18, 2019. In that email, Ms. Poelking attached a spreadsheet that expressly stated, with respect to a particular investment in 7Wire, that only "$280k is traceable," despite the fact that the same spreadsheet showed $588,000 in funds transferred to 7Wire and a "current value" of $784,088. Similarly, on November 8, 2019, Ms. Poelking sent an email to Mr. Olinghouse expressly alerting him to the fact that, "for some of the assets, only a % is attributable to the dividend" that the Government claims as being derived from criminal proceeds.

Mr. Olinghouse's declaration also stands in contrast to Ms. Poelking's declaration, in which she stated that, "[a]s part of [her] tracing efforts" in 2019, she "learned that some of the same entities that had received traceable proceeds had also received nontraceable funds from the defendants." In light of those statements and Ms. Poelking's testimony that she worked with Mr. Olinghouse to draft the forfeiture allegation, the Court should permit Mr. Olinghouse to be examined by Mr. Shah's counsel to determine how he was not "aware that any portion of these investments was from a non-traceable source of funding," despite Ms. Poelking's direct

communications to him (including, but not limited to, those which the Government has already disclosed).

In addition, Mr. Madden's declaration indicates that Mr. Olinghouse "was the primary drafter of the protective order[,] the application for the protective order," and "the forfeiture allegations in the superseding indictment," and that Mr. Madden "talked about the protective order materials with [Mr. Olinghouse] before [the Government] submitted them to the Court," but he "do[es]n't recall the details." Mr. Olinghouse's declaration does not make any reference to his discussions with Mr. Madden and does not, like Mr. Madden's declaration, profess any failure of recollection with respect to the substance of those communications. Mr. Johnston's declaration similarly reflects communications with Mr. Olinghouse, but those communications are not reflected in Mr. Olinghouse's declaration. Mr. Shah should be permitted to question Mr. Olinghouse about those communications that Mr. Madden (and perhaps Mr. Johnston) fail to recall.

### C. Matthew Madden

The Government also submitted a declaration of Matthew Madden, who was the lead prosecutor on this case prior to his departure from the Department of Justice. Mr. Madden's declaration acknowledges that he received two emails in 2020 that disclosed to him that "7 Wire and Guild Capital [had] both traceable and non-traceable funds" transferred to them. Yet he indicates that those exchanges "did not stand out" to him, that he did not "think that any of the information in the emails was problematic," and that he "did not think there was any basis to challenge the protective order."

Those statements are difficult to reconcile with one another. Mr. Madden was surely aware of the legal principle that non-traceable assets were not subject to pretrial restraint at the time he

4

received those communications. After all, that issue was central to Mr. Shah's original Motion to Amend in 2020 (Doc. #75-1), and this Court's April 1, 2020 order denying that motion explicitly held that the Government was not permitted to restrain untainted assets. *See* Order (Doc. #108). Indeed, Mr. Madden signed a filing by the Government on January 22, 2020 that expressly acknowledged that "pretrial restraint [is] permitted for 'tainted assets prior to trial, but not the restraint of substitute assets." *See* Gov't Resp. (Doc. #80) at 7. In light of the proximity of those events to the communications in question, Mr. Shah should be permitted to examine Mr. Madden in order to determine why he did not "think that any of the information in the emails was problematic."

In addition, as set forth in Mr. Shah's prior submission, Mr. Madden appears to have been principally responsible for communications with third parties who were subject to the Protective Order. *See* Proffer (Doc. #652). As Mr. Madden's declaration does not address those communications, his testimony is required to investigate those communications—including those communications that may not be memorialized in writing. *See supra* § A.

### D. William Johnston

Mr. Johnston's declaration, as noted above, reflects certain communications with Mr. Olinghouse, but it does not claim to be an exhaustive recounting of such communications. Nor, like Mr. Madden's affidavit, does it attest to a failure of recollection as to any such communications. Mr. Johnston should therefore be called to testify to his recollection as to any discussions he may have had with Mr. Olinghouse regarding the preparation of the forfeiture allegations and filings in response to the 2020 Motion to Amend.

Mr. Johnston's declaration also fails to discuss any communications he may have had with third parties. As Mr. Johnson's declaration does not address the existence or nonexistence of those

communications, his testimony is required to address any such communications—including those communications that may not be memorialized in writing. *See supra* § A.

### E. Kyle Hankey

Mr. Hankey's declaration indicates that he was "significantly involved in preparing drafts of the government's response" to the 2020 Motion to Amend. But Mr. Hankey also indicates that, "because of [his prior] recusal," he was "not familiar with all of the details of the current litigation pertaining to the pre-trial restraint of defendants' assets" at the time he prepared his declaration. As a result, it is not clear that Mr. Hankey's declaration provides a complete recitation of the facts relating to his knowledge of the excessive restraint.

Mr. Hankey's declaration also fails to discuss any communications he may have had with third parties. As Mr. Hankey's declaration does not address the existence or nonexistence of those communications, his testimony is required to address any such communications—including those communications that may not be memorialized in writing. *See supra* § A.

### F. Saurish Appleby-Bhattacharjee

The Government has not disclosed any declaration from Mr. Appleby-Bhattacharjee. The record in the case reflects that Mr. Appleby-Bhattacharjee entered in the case in February 2020, while the 2020 Motion to Amend was pending. The Government has also logged numerous communications involving Mr. Appleby-Bhattacharjee in its privilege log, but it has otherwise not disclosed the extent of Mr. Appleby-Bhattacharjee's involvement in the litigation on the 2020 Motion to Amend or any knowledge he may have had thereafter as to the restraint of nontraceable assets.

As a result, Mr. Appleby-Bhattacharjee's testimony is likely necessary in order to ascertain the nature and extent of his involvement in the matters currently under the Court's consideration, as well as any communications he may have had with third parties. *See supra* § A.

**G. Megan Poelking**

As the Court noted in its ruling on Mr. Shah's request to compel the disclosure of communications over which the Government had claimed work product protection, Ms. Poelking has testified on multiple occasions relating to her involvement in the preparation of the forfeiture allegations and the Protective Order, as well as the Government's response to the 2020 Motion to Amend. That said, the Court previously ruled that Mr. Shah was not entitled to question Ms. Poelking regarding the substance of her communications with Government Attorneys, and on that basis Mr. Shah's counsel confined his questions to Ms. Poelking considerably. In particular, the Court ruled as follows on January 3, 2024:

> But I think the conversations with the government attorneys, I'll sustain an objection to them if you ask them. And to the extent that you've memorialized what you intend to ask about those conversations, that objection's sustained absent the government -- and -- and I'll hear argument later about the need for it, need to overcome the privilege, but the privilege there is properly at least asserted.

Tr. 71:16–23. As a result of this ruling, Mr. Shah's counsel made a deliberate effort to avoid questions that would have required Ms. Poelking to reveal communications with Government attorneys.

In light, however, of the Court's ruling on the Government's work product claims, Mr. Shah should now be permitted to inquire of Ms. Poelking as to the substance of her communications with the Government Attorneys. In particular, and most essential to Mr. Shah's motion, Ms. Poelking's communications with Mr. Olinghouse in the days leading up to the superseding indictment are of critical importance. As described above, Ms. Poelking and Mr.

Olinghouse worked closely together in order to develop the forfeiture allegation. Yet somehow that work resulted in an apparent misunderstanding between Ms. Poelking—who testified said that she knew that there were untainted assets but did not believe they have been restrained—and Mr. Olinghouse—who has indicated that he did not know that there were untainted assets and therefore did not think it problematic that "all right, title, and interest" at each of the entities had been restrained. Perhaps something was lost in translation in Ms. Poelking's communications with Mr. Olinghouse—but until Mr. Shah is permitted to inquire of Ms. Poelking and Mr. Olinghouse regarding those communications, that hypothesis cannot be taken as a given.

## CONCLUSION

For the foregoing reasons, Mr. Shah respectfully requests that the Court permit Mr. Shah to inquire of the Government Attorneys and Ms. Poelking as to their communications with third parties and their communications in the course of preparing the forfeiture allegation, the protective order, and the Government's response to the 2020 Motion to Amend, as set forth in further detail above.

Dated: April 16, 2024

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*

*Attorney for Defendant Rishi Shah*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 16, 2024, the foregoing was served upon all counsel of record by operation of the Court's electronic filing system.

                                      */s/ Richard E. Finneran*
                                      RICHARD E. FINNERAN