UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 19 CR 864 |
| ) | Judge Thomas M. Durkin |
| RISHI SHAH and ) | |
| SHRADHA AGARWAL ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT RISHI SHAH'S
PROFFER OF TOPICS OF INQUIRY COMMON TO
PROPOSED GOVERNMENT WITNESSES**

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, hereby responds to defendant Rishi Shah's proffer of topics of inquiry common to proposed government witnesses. The government opposes any efforts to call current or former government prosecutors as witnesses in this case, as well as any additional effort to recall FBI Forensic Accountant Megan Poelking. Over the government's objection, the Court recently ordered the production of declarations and affidavits from prosecution team members that were submitted *ex parte* and under seal. Those materials, which have been produced to the defense, make clear that no member of the prosecution team acted knowingly, intentionally, or in bad faith with respect to the over-restraint of any assets in this case.

Now that defendant has access to these materials, and not satisfied that those materials clearly show that the government did not act inappropriately, he seeks testimony from all those who provided declarations and affidavits, as well as testimony from another prosecutor who did not even join the case until after it was charged. Enough is enough. The Court should reject defendant's efforts because the affidavits and declarations address all issues that need to be resolved as part of the evidentiary hearing. Moreover, defendant has set forth no need for this live

testimony, other than has apparent desire to attack the credibility of the former prosecutors or to suggest that they should have known of the over-restraint of assets in this case. The second point is particularly ironic given that if anyone should have known what funds were invested in various assets, and what assets had been over-restrained as a result of the protective order, it was defendant. Simply put, the goals of the evidentiary hearing are not furthered by testimony from the prosecutors, and such an extraordinary request should be denied given the detailed nature of the affidavits and declarations that defendant already has in his possession.

Below the government addresses each proposed topic and witness that defendant identifies in his filing, but before doing so, raises three matters. First, the government adopts its arguments raised in a prior filing related to this issue, Docket #639. As detailed in that filing, testimony from the prosecutors who were formerly assigned to this matter would intrude upon various privileges such as the attorney-client, work-product, and deliberative process privileges. Defendant has also not made the requisite showing of substantial need to outweigh the government's interest in its privilege. The affidavits and declarations show that the government neither intended the overbroad restraint nor knew it was in place, making the live testimony unnecessary.

Second, in his motion, defendant uses language seemingly implying that the government is improperly asserting the work product privilege over various materials following the Court's ruling on the production of the affidavits and declarations. *See* Def. Mot. at 1, fn. 1 ("The Government continues, despite the Court's recent ruling, to claim the right to withhold more than 100 of its communications under the work product doctrine . . . ."). To the extent defendant is arguing that he is entitled to more than he received, that simply is not the case. At the hearing, the Court ordered the production of only the affidavits, declarations, and materials attached thereto.

(*See* Docket #701, Transcript of hearing dated April 9, 2024, at 529) ("None of this is meant to be any type of broader waiver than the disclosure of the affidavits and their attachments."). The record should be clear that the government has complied in all respects with the Court's order.

Third, defendant's motion relates to the claim that his Fifth Amendment rights under the Due Process Clause have been violated. As the government argued in its response to defendant's initial motion, Docket #512, dismissal of an indictment on Due Process grounds requires much more than anything resembling what has happened in this case. *See, e.g.*, *United States v. Fountain*, 840 F.2d 509, 513 (7th Cir. 1988) (noting that the court has "reserved the possibility that knowing use of perjured testimony, amounting to the creation of trumped-up charges, *might* justify the dismissal of an indictment.") (emphasis added); *United States v. Stein*, 495 F. Supp. 2d 390, 412-413 (S.D.N.Y. 2007) (Due Process violation where government's conduct "shocks the conscience" or was "outrageous government conduct."). The affidavits and declarations make clear that this case involves nothing even close to what might justify dismissal.

    A.    **Communications with Third Parties**

Defendant first asserts that he should be entitled to communications prosecutors had with third parties, including entities that restrained untainted assets pursuant to the Court's protective order. Based on the materials produced to the defense, including emails, the only prosecutor who had such conversations was former Assistant U.S. Attorney Matthew Madden. There is no basis to call any other prosecutors on this topic given that there is no indication they spoke to third parties.

While the government agrees that conversations Madden had with third parties would not be privileged, defendant has failed to set forth the relevance of such communications, particularly

3

after the release of the affidavits and declarations. More specifically, Madden's affidavit makes clear that he was unaware of any over-restraint of assets as part of the protective order. Accordingly, there is no relevance to his conversations with third parties about the nature of the protective order. The theory that defendant has previously asserted was that Madden gave instructions to third parties that were somehow inconsistent with the terms of the protective order because he was aware of the over-restraint. That is pure speculation and not borne out by the emails, but also makes no sense given Madden's affidavit that he had no knowledge of the over-restraint and did not intend for it to take place. Evidence of what Madden told third parties about the protective order does not make defendant's constitutional claims any more or less meritorious. Accordingly, this request should be denied.

  B.  **<u>Daniel Olinghouse</u>**

Defendant seeks testimony from former MLARs Attorney Daniel Olinghouse because he finds Olinghouse's sworn statement that he was unaware of any over-restraint of assets inconsistent with two emails sent to Olinghouse. One such email, dated November 8, 2019, has a subject line that does not even implicate defendant. Instead, the subject is "Sharda tracing." The other email is dated November 18, 2019. Defendant attempts to impute knowledge to Olinghouse by referencing one cell of a 100 plus line spreadsheet attached to the email.

Olinghouse has made a sworn statement to the Court about his lack of knowledge regarding the over-restraint, which is more than sufficient for purposes of the evidentiary hearing. To the extent defendant believes that the documentary evidence shows something different, he is free to point that out to the Court as part of the hearing. It is the government's sincere hope that defendant is not suggesting that government attorneys, who are of course officers of the Court, have

knowingly provided false information in their affidavits/declarations. Short of that, defendant's proposed testimony from Olinghouse seeks to show only that Olinghouse and perhaps others should have known about the over-restraint based on emails that were provided to them. That is not a ground for a constitutional violation, and it has never been an issue for the evidentiary hearing. Therefore, Olinghouse's testimony will not make any material fact for the evidentiary hearing more or less likely.

### C. Matthew Madden

A similar analysis should apply to defendant's request to call former AUSA Matthew Madden. Defendant claims that Madden's affidavit is "difficult to reconcile" with emails Madden received and which have been produced in discovery. Defendant has all he needs to draw whatever conclusion he would like from the emails and affidavit. However, any suggestion that Madden should have known certain information does not make issues to be resolved at the evidentiary hearing any more or less likely.

### D. William Johnston

For former DOJ Trial Attorney William Johnston, defendant claims his testimony is needed to probe certain communications with Olinghouse. Given that both Olinghouse and Johnston have provided the Court with sworn statements indicating that they were unaware of the over-restraint in this case, defendant fails to articulate why these conversations are at all relevant. Accordingly, there has been no showing of any need for Johnston's testimony, and it will not make any material fact for the evidentiary hearing more or less likely.

### E. Kyle Hankey

Defendant seeks DOJ Trial Attorney Kyle Hankey's testimony because he claims Hankey's declaration does not detail whether Hankey knew of the over-restraint. Hankey's declaration, however, shows exactly what defendant claims is missing. More specifically, in his declaration, Hankey noted that "[b]ecause I was very busy on another matter at the time, I had minimal involvement in the preparation and review of the materials leading to the restraint of assets that I understand are at issue in the hearing referenced in the Court's December 1, 2023, Order (Doc. 624)." Hankey also noted that "I do not recall reviewing the details of the asset tracing that led to the pre-trial restraint of the defendants' assets. I was not aware until this issue was raised by defense counsel post-trial in 2023 that the government had over-restrained certain assets." This is more than enough for the Court to conclude that, contrary to what defendant claims in his motion, Hankey had no knowledge of the over-restraint. His testimony, therefore, is not needed.

### F. Saurish Appleby-Bhattacharjee

When the government declarations were filed in this case, Saurish Appleby-Bhattacharjee was no longer employed by the Department of Justice. Hence, no declaration or affidavit was included from him. Though defendant claims that one is needed, he provides no basis as to why. Appleby-Bhattacharjee was not one of the original government attorneys of record when this case was initially charged. Instead, he filed a notice of appearance on February 13, 2020, several months after the indictment was returned. (Docket #92.)

Defendant references emails that included Appleby-Bhattacharjee contained on the government's privilege log. However, Appleby-Bhattacharjee did not receive an email as reflected

6

on the privilege log until December 2020, and did not send an email appearing on the privilege log until May 2023, well after any time-period relevant to the issues raised in the evidentiary hearing.

Thus, defendant has not set forth even a prima facie case for Appleby-Bhattacharjee's testimony. This is particularly true since the other prosecutors assigned to the matter before Appleby-Bhattacharjee have already established that they did not have knowledge or intent of the over-restraint.

### G. Megan Poelking

Even though FBI Forensic Accountant Megan Poelking has testified four times as part of this case, and two times as part of the currently pending evidentiary hearing, defendant seeks her testimony yet again. According to defendant, he needs to question Poelking as to the substance of communications she had with government attorneys, particularly Olinghouse.

Though defendant seeks Poelking's testimony once more, he has not complied with the Court's ruling about when Poelking can be recalled. On April 9, 2024, the Court set very specific ground rules for further testimony from Poelking:

> As to Ms. Poelking, she has now testified four different times: at trial, at the forfeiture hearing, at the January hearing, and yesterday. Any effort to recall Poelking will have to be with specific references to the transcript where there was an assertion of privilege that I sustained and the question is clearly relevant. I'll then judge whether or not additional questions of her are necessary.

(Docket #701, Transcript of hearing on April 9, 2024, at 528-29.)

Defendant has not set forth in his motion specific references to the transcript where the Court sustained a question related to an assertion of privilege. On this ground alone, defendant's request should be denied.

7

Even if the Court excuses defendant's failure to comply with the requirements set out on April 9, his efforts to recall Poelking should still be denied. Poelking has already testified that she did not believe any untainted assets had been restrained. Defendant wishes to probe Poelking's testimony versus Olinghouse's statement in his declaration that he believed there were no untainted assets. Defendant fails, however, to explain how such testimony is needed or relevant in light of Poelking's testimony and Olinghouse's declaration. Further inquiry into how or why there was a miscommunication on the issue of restraining assets is irrelevant because the materials that have already been submitted to the Court and provided to the defense show that the over-restraint was not knowing, intentional, or in bad faith. As such, there is no reason to call Poelking again.

Accordingly, based on the above, the Court should deny defendant's request for testimony from the current and former government employees described above.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s/ Jason A. Yonan
JASON A. YONAN
Assistant United States Attorneys
219 S. Dearborn Street, Suite 500
Chicago, Illinois 60604
(312) 353-0708

Dated: April 22, 2024

8