IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 CR 864 |
| | ) | Judge Thomas M. Durkin |
| RISHI SHAH, *et. al.*, | ) | |
| (SHRADHA AGARWAL) | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT AGARWAL'S RESPONSE
TO THE GOVERNMENT'S SENTENCING MEMO**

Defendant, **SHRADHA AGARWAL**, by and through her attorneys, **BLEGEN & ASSOCIATES, WILLKIE FARR & GALLAGHER, THE LAW OFFICE OF JOHN D. CLINE**, and **LARSON LLP**, respectfully submits the following response to the government's sentencing memorandum (Dkt. 751).

I.     INTRODUCTION

The government seeks a sentence of ten years' imprisonment for a woman who will be deported after her sentence is concluded, would serve *more* of her sentence in prison than other defendants solely because she is not a U.S. Citizen, would be incarcerated in a prison far harsher than is necessary, would lose her and her husband's dream of having children, and may well lose her beloved mother whom she recently nursed through a health scare. The Court has the ability to remedy these and other inequities under the wide sentencing discretion afforded by 18 U.S.C. § 3553. We urge the Court to do so and to fashion a sentence that fits the offender, not simply the offense, and which accounts for the reality of the punishment that will be imposed upon Shradha.

## II. Shradha's Role at Outcome

Shradha was convicted after a trial, and we do not seek to relitigate the verdict here. Nevertheless, a guilty verdict does not mean that a jury necessarily accepted each and every one of the government's allegations. And, it certainly does not mean that the jury reached conclusions that are either not supported by or are directly contrary to the evidence. The government's sentencing memo relies on various assertions of fact from the trial. Some are arguable and were contested at trial. Others are simply not supported by the record.

Primarily because it lumps Shradha together with other defendants, but also because it misapprehends the actual evidence, the government's sentencing memo takes extreme, unsupported positions, and ultimately advocates for a sentence that fails to account for her actual conduct. In fashioning an appropriate sentence, the Court should give Shradha the individualized consideration to which she is entitled, taking her actual role into account.

### A. Shradha's Involvement in Sales and Membership

At long last the government appears to concede that Shradha was involved in sales for only a limited time, and thereafter had a limited direct involvement in the scheme: "Agarwal's role in the scheme was different than that of Shah's – with Agarwal ultimately less culpable than Shah." (Dkt. 751, p. 14) "Agarwal became less directly involved in the scheme after 2013." *Id.* Those concessions, however, come with a caveat: "[e]ven when Agarwal stepped back from the day-to-day of selling campaigns, she continued to support the same essential scheme she had helped implement." *Id.* at 5. The government continues that, "Desai took over the sales side of the business, and Agarwal oversaw the membership side of the business, the part that went out to acquire new offices." *Id*. at 6. From her role overseeing membership and as President, the

2

government concludes that Shradha had "high-level visibility into the ongoing scheme," participated in "delta" meetings, and "received and reviewed" delta reports. *Id*.

The problem with the government's conclusion – that even after Shradha left sales her roles kept her as an active participant in the scheme – is that it is contrary to the evidence. Leave aside the voluminous evidence showing that Shradha's primary roles at the company were related to the creation of educational content, hiring, and the buildout of new office space. (Tr.1631; 4839; 7843; 1566; 1620-21; 5933). She unequivocally **did not** oversee the "membership side of the business." Ashik Desai told the jury who ran membership:

> When I first started, at that time Shradha was leading the sponsorship sales team, but that was starting to transition. *Rishi was -- was taking over sponsorship sales and was also going to run the membership sales side of the business.* And then Shradha, over time, did more of the kind of marketing, HR, and product.

(Tr. 3407 emphasis added)

Mr. Shah ran membership, and the person *he* oversaw in membership was not Shradha. It was Matt Garms, who everyone at trial, including the prosecutors, acknowledged was the head of membership outreach. (Tr. 9245 – govt rebuttal; Tr. 3763 – Desai direct; Tr. 2322 – Ma direct). This newly found theory, that Shradha ran membership and thus had high level visibility into the ongoing scheme is simply not supported by the evidence.

Likewise, the government's continued reliance on delta reports should be rejected. At trial there was some confusion between "growth models" and delta reports. Shradha and many others (who are not alleged to be co-schemers) received growth models, which were goal planning documents for the entire company and each department leader, (*see, e.g.*, CX 11160, CX 11164) addressing such topics as hiring goals relevant to Shradha's role in the

company. (Tr. 5927-33). Shradha received none of the actual delta reports that tracked contracts. (E.g. Tr. 3114-15, 8394-8406, 8458-59, 8827-28).

Shradha's role was, in fact, different. She was directly involved in sales for a limited time (CX10085; DX3063), overlapping with Desai for a matter of weeks (Tr. 4840: 17-19), and she did not run membership. As Desai conceded, numerous emails during her limited time in sales showed Shradha's focus on accuracy in list-matches, speaking openly with salespersons about projections, and demonstrating caution in projections. (Tr. 5891:19-5892:3; CX8389; CX8931; CX8818; CX7455; CX7846; CX7915; CX8651; GX206; CX11099; CX11093; DX3054; CX7841). For the majority of the scheme, which the Indictment alleges ran from 2011 to 2017, Shradha was outside of the two departments (sales and membership) that could have direct insight into the ongoing fraud. She advocated for transparency and collaboration between departments, which runs counter to the Government's narrative of hiding information from the sales department. (Tr. 4944-5, 4954-60, 1624-30; DX8626). She also openly discussed sell-then-build, even with potential hires for the sales/analytics department in New York. (GX 495).

**B.     Shradha Did not Lie to Lenders and Investors**

The government's memo asserts, in an argument heading, that Shradha "lied to auditors, lenders and investors." (Dkt. 751, p. 8). Perhaps the government meant only to say, as the Indictment alleges, that documents were provided with Shradha's "knowledge and approval,"[1] or that she signed documents (the management representation letters) that were ultimately reviewed by lenders and investors. Rather than concede her limited involvement in fundraising, the government's memo lumps Shradha together with other

---

[1] *See, e.g.*, Dkt. 14, p. 13 ("SHAH and PURDY, with AGARWAL's knowledge and approval, provided and caused to be provided to the lenders materially false and misleading financial information.")

4

defendants as if she were a driving force behind fundraising. The government's own citations (*see, Dkt.* 754, pp. 3-9), along with the rest of the evidence from trial, belie those claims.

Citing to Tr. 3978, the government asserts that "Shah, Agarwal and Purdy 'started to look for outside investors in the company to raise money.'" (Dkt. 751, p. 8). The transcript, however, states only that "Outcome" started looking for outside investors. (Tr. 3978). When surrounding pages are reviewed, it is clear that the testimony related to hiring Deloitte in preparation for fundraising, developing relationships with investors and banks, and negotiating with investors. Shradha was not involved with any of these. (Tr. 3977, 3840, 3817).

Citing to a variety of exhibits, the government's memo also asserts that the "defendants" set their sights on acquiring AccentHealth to further their ambition to create a billion-dollar company. (Dkt. 751, p. 9). Again, the citations do not support *Shradha's* involvement in this decision. Shradha signed a consent to allow the purchase. (GX 657). Leaving that aside, however, Shradha was not part of the conversations cited by the Government, such as between Mr. Shah and Sameer Kazi, about growing the company to $1 billion (Tr. 266-67; 430); she was not involved in the presentation to lenders for the AccentHealth acquisition (Tr. 7844-5, 3805) nor the ratings agency related to the loan (Govt cites Tr. 7775, but see Tr. 7781); did not tell Desai in 2016 that Outcome reached over $1 billion in revenue (Tr. 5748).[2]

---

[2] The Government also seeks to attribute involvement to Shradha by writing "Shah, Agarwal and Purdy used the same playbook to defraud investors out of $487 million in 2017." (Dkt. 751, p. 10). But in closing arguments at trial, the government argued that only her codefendants had "recycled the same decks for investors in early 2017" (Tr. 10388).

Lastly, the government asserts that a payout of $225 million was "front-of-mind for Shah and Agarwal from the outset." (Dkt. 751, p. 10). In support, the government cites a text from December 2016, that Mr. Shah wrote to Shradha explaining that *Shah* was "cautiously very excited" that the dividend would "be really big for both of us," and "will provide a security that will be really amazing." *Id*. (*citing* GX 702) Mr. Shah's mindset is, of course, not Shradha's. Her level of excitement or "front-of-mind" thoughts are perhaps best exemplified by the fact that she did not even respond to Mr. Shah's text. Nothing in the evidence, or anything in Shradha's past, suggests that she became involved in Outcome in the hopes of someday "cashing out." As discussed in her sentencing memo, Shradha did not even receive partnership equity in the company until 2015. (Dkt. 753, p. 24 *citing* Exhibit L).

The reality is Shradha was demonstrably uninvolved in the fundraising decisions and had limited interactions with lenders and investors. (Dkt. 754, pp. 3-9) In considering a proper sentence for her, the Court should not lump Shradha together with other defendants, but should instead account for her individual involvement.

### C. The "smoke bomb" comment is not a smoking gun

The government's memorandum also portrays the "smoke bomb" comment which David Ma attributes to Shradha as best capturing "her support for this extensive ongoing fraud." (Dkt. 751, p. 6). The government's memo insists that "Ma expressed his concerns with Outcome's practice of overselling inventory" and "Agarwal's response was telling: 'we throw smoke bombs.'" (Dkt. 751, p. 6).

The Court likely remembers Mr. Ma's testimony from trial, so we will not belabor this point. Even on direct, however, Mr. Ma explained that he did not directly reveal to Shradha that he was discussing fraud or something unethical. He testified that he "use[d]

6

euphemisms," "dance[d] around the topic," and "didn't want to so directly imply that something very unethical was going on." (Tr. 2423-2424).

The government also points to Shradha's attendance at a public forum where "they," meaning Shradha and Mr. Shah, "boasted that they had solved the chicken-and-egg problem of simultaneously obtaining doctors offices and pharma clients to advertise in those offices, when in fact they had sold offices that did not exist and then concealed the inevitable shortfalls." (Dkt. 751, p. 7, *citing* GX606). Again, the government lumps Shradha with Mr. Shah and attributes his comments, and state of mind apparently, to her. The government has also forgotten Shradha's own comments from this same video, which contradicts the government's characterization of her purported state of mind. In that same video, Shradha openly broadcasts the "sell-then-build" model based on projections: "So for us, the two different markets was -- one was the doctors' practices that was installing our system, and the other was the advertisers. . . So a lot of it was really kind of to us going step by step, adding a few screens and *then telling the advertisers hey, we have 50, we're projected on 200. If you start January 1st with us, it's November 15, we'll be there*. And each time delivering on small goals, keep building those relationships and keep expanding on that…." (DX 12330).

Again, the defense is not seeking to relitigate the trial. But Shradha is not Mr. Shah. She is her own person, with her own statements, and her own level of involvement.

### III. The Government's Take on Shradha's Relationship with Mr. Shah is Incorrect

As part of Shradha's history and characteristics, the government's memo asserts that, "[g]iven Agarwal's role in the company and as Shah's friend and confidant, one can reasonably question whether Shah would have moved forward with the scheme without her support and active

7

participation." (Dkt. 751, p. 14). This position is hard to square with the trial evidence, the government's previous positions, and with the emails now before the Court that were attached to Shradha's sentencing memo. (Dkt. 753, Exhibits N & O).[3]

It was not Shradha who pushed a very aggressive sales strategy. (Tr. 3628). It was not Shradha who pushed for aggressive sales to grow revenue as quickly as possible. (Tr. 3830). It was not Shradha who "despite being informed of significant deltas—'continually push[ed]' for ever-increasing sales 'goals that [Outcome] could not reach' without defrauding its pharma clients." (Govt. Version of the Offense Supplement, p.5, *quoting* (Tr. 2348–49, 3028–29)). If Shradha were as essential as the government suggests, one can reasonably question why she did not push the same strategies. One can also reasonably question why Desai would have been necessary in the first place. Why not simply keep Shradha in sales if she had the same aggressive goals of driving ever-increasing sales and revenue?

As already described in Shradha's sentencing memorandum, Shradha and Mr. Shah were frequently at odds, with communication between them deteriorating significantly after the end of their romantic relationship. (Dkt. 753, pp. 30-35). As a result, Shradha was left in the dark regarding important issues such as fundraising. *Id*. (*citing* Exhibit O). Shradha and Mr. Shah also frequently argued over business operations, with Mr. Shah's decisions prevailing when they disagreed. The Government asserts that Shradha "had insufficient moral backbone to push Shah onto the right path." (Dkt. 751, p. 13) The reality is Shradha was sidelined and dismissed. She discussed this with her husband in contemporaneous text messages.[4]

---

[3] These same emails were provided to the government in advance of trial as potential defense exhibits.
[4] The below communications come from DOJ-AGARWAL-0000038850 pp. 46, 193-194, 685-686

| |
|---|
| 2/6/2016<br>**Agarwal:** [I've] started to feel so out of place at any company event bc RS just takes over and I don't have the energy to fight<br>I just feel useless and like I'm not contributing anything<br>**Premkumar:** Aww baby. This time is different  no<br>You're there<br>**Agarwal:** No it's not<br>He just takes over all the communication […]<br>And even if someone asks me a Q he just jumps in to answer |
| 5/23/2016<br>**Agarwal:** Rishi wants to run product<br>**Premkumar:** Hmm why?<br>**Agarwal:** He thinks things should happen in 48hrs<br>**Premkumar:** So what's not happening on time?<br>And how can he solve it better than you […]<br>**Agarwal:** I've been fighting with RS all day<br>**Premkumar:** […] Come home and tell me about it<br>**Agarwal:** So tired baby<br>I feel so defeated |
| 4/7/2017<br>**Agarwal:** I hate being here […]<br>I'm really unhappy here<br>**Premkumar:** Awww baby<br>Still not feeling part of decisions?<br>**Agarwal:** No<br>Keep getting talked over<br>**Premkumar:** Boys club?<br>Hmm<br>**Agarwal:** Yes<br>**Premkumar:** Be a boy.  Show then you can be a better boy than them and that's not necessarily a good thing<br>**Agarwal:** Yes. Loud rowdy boys […]<br>Who am I<br>**Premkumar:** You're a pillar of reason and strength<br>With high morals and consistent values that are not easily swayed<br>**Agarwal:** It's just so much the rishi show |

IV.     **REMORSE**

As an aggravating aspect of Shradha's history and characteristics, the government's memo asserts that, "Agarwal, like Shah, has not acknowledged any wrongdoing, or shown any acceptance of responsibility or remorse whatsoever." (Dkt. 751, p. 15). Leaving aside the continued lumping together of Shradha and Mr. Shah, Shradha has expressed and demonstrated sincere remorse, as

9

the defense sentencing memo and attached letters address at length. (Dkt. 753, pp. 5-6; 50-53). As one example, Shradha's husband Jayant describes Shradha's long reflection on her conduct and deep remorse:[5]

> She has spent years reflecting on her failings - wanting to learn and grow from these unfortunate events - and where she could have done more. She has not blamed anyone else, or cast aspersions at others. She continues to prioritize the wellbeing of others - spending time educating entrepreneurs to exercise more caution and avoid making mistakes in their businesses. I can see that Shradha deeply regrets what unfolded at Outcome Health.

Jayant Premkumar Letter (PSR, pg. 77).

Other writers, whose letters are exhibits to Shradha's sentencing memo, have echoed these sentiments:

- I believe that Shradha has learned from this situation and the pain it has caused. I think she has realized the mistakes that were made and how differently things should have been done to prevent what happened. [Jason Duff Exhibit C-4]

- In summary, I believe that Shradha is remorseful. She has acknowledged to me mistakes she made and profound lessons she has learned. She had a strong upbringing. She knows that many close to her are devastated. [Professor Jeff Coney Exhibit D-12]

- During our candid conversations, Shradha expressed profound remorse for any oversight in governance that may have occurred under her watch, emphasizing her unwavering commitment to learning from these experiences and emerging as a stronger advocate for responsible corporate leadership. [David Gardner Exhibit C-9]

- She did not blame anyone, speak ill of others, or make excuses. She felt bad for her employees who lost their jobs and investors who lost their money. [Sameer Pandey Exhibit B-11]

---

[5] Jayant's letter was provided to Probation along with a version of the offense, and it is part of the PSR packet from October 31, 2023.

V.   SOPHISTICATED MEANS

The government has objected to the determination by the Probation Department that the sophisticated means enhancement does not apply. (Dkt. 751, p. 11-12). We agree with Probation's conclusion, adopt the arguments set forth in Mr. Shah's sentencing Memo (Dkt. 764, pp. 44-45), and add the following.

Since 2015, the sophisticated means enhancement has required a finding that the offense itself involved sophisticated means, and that "the defendant intentionally engaged in or caused conduct constituting sophisticated means." USSG § 2B1.1(b)(10)(C). Application Notes explain that sophisticated means refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 comment. n.9(B). The key question is whether the conduct "shows a greater level of planning or concealment than a typical fraud of its kind." *United States v. Green*, 648 F.3d 569, 576 (7th Cir.2011) (*quoting United States v. Landwer*, 640 F.3d 769, 771 (7th Cir.2011)).

Here, nothing in the offense itself or Shradha's conduct goes beyond what would be required for a typical fraud of its kind. The sophisticated means enhancement should be rejected.

Respectfully submitted,

s/Patrick W. Blegen_____
**PATRICK W. BLEGEN**, one of the
Attorneys for Shradha Agarwal

**BLEGEN & ASSOCIATES**
53 W. Jackson Boulevard
Suite 1424
Chicago, Illinois 60604
(312) 957-0100

11