United States v. Shah, et al.

Case # 19-CR-00864

Supplemental Expert Report of Carl S. Saba, MBA, CVA, ASA, ABV

Confidential

June 24, 2024

Table of Contents

I. Qualifications ................................................................................................................... 1

II. Assignment ..................................................................................................................... 1

III. Opinions .......................................................................................................................... 1

I. **Qualifications**

1. My qualification and compensation are contained in my June 14, 2024 Initial Report ("Saba Initial Report"). My curriculum vitae is attached to the Saba Initial Report as Exhibit A.

II. **Assignment**

2. In addition to my assignment described in the Saba Initial Report, I have been asked by Bryan Cave Leighton Paisner LLP and Quinn Emanuel Urquhart & Sullivan, LLP ("Counsel") in the matter of United States v. Shah, (referred to as the "Government," and Mr. Shah or "Defendant," respectively) to review and assess the Affidavit of Ravi Gupta (the "Gupta Affidavit"), dated June 18, 2024, and to determine whether the Gupta Affidavit impacts my Saba Initial Report conclusions. In this supplemental report, I used defined terms as defined in the Saba Initial Report.

III. **Opinions**

3. The Gupta Affidavit, at par. 3, states that Goldman Sachs, through GPOP Onshore and GPOP Offshore invested $100 million in Series C-1 Common Stock in Outcome Health. This is consistent with my understanding of the amount of the Goldman Sachs investment based on my review of documents cited in Appendix B to my Saba Initial Report. I note for clarity that Goldman Sachs and other investors invested in Outcome, Inc., which in turn had ownership in Outcome Holdings, LLC, the entity that I valued in the Saba Initial Report.

4.  The Gupta Affidavit, at par. 4, states that the Class A and Series C-1 Investors owned 9.75% of the shares in Outcome Health. (I assume that Mr. Gupta is referring to Outcome Holdings, LLC when he refers to Outcome Health.) According to the information I have reviewed, Class A and Class C-1 Investors owned (through their shares in Outcome Inc.) 8.89% of the units in Outcome Holdings LLC. When founder Class B stock is included, Outcome Inc.'s total ownership of Outcome Holdings LLC was 9.87%. These figures are close to the 9.75% amount that are cited in the Gupta Affidavit, but they are not identical. Exhibit 2.5.1 of the Saba Initial Report provides ownership details.

5.  I note that the Class A and Series C-1 Investors did not own 9.75% of the value of Outcome Holdings LLC, as implied in par. 4 of the Gupta Affidavit (or 8.89% of the value as per my records of percentage share ownership). Because of the Class A and C-1 Investors' preferential rights (which are mentioned in par. 4 of the Gupta Affidavit), the Class A and Series C-1 Investors owned closer to 50% of the company's value, post-money. Therefore, the implied post-money valuation for Outcome Holdings per my analysis is approximately $1 billion, not $5 billion.

6.  Mr. Gupta's reference to a venture capital style post-money valuation of $5 billion for the company is a vastly oversimplified and unreliable way to interpret value based solely on relative share count ($487.5 million divided by 9.75% of total shares equals $5 billion company value). While this may be how post-money value is sometimes discussed in simplified terms, this approach is not accepted in valuation guidance and practice. As the shares bought by Goldman Sachs and the other Class A and C-1 Investors have preferential rights for a fixed return (which is acknowledged in the Gupta Affidavit), the Class A and C-1

shares cannot be worth the same as Founder shares that don't have these preferential rights. Further, the market multiples and forecasts that Goldmans Sachs and CapitalG were reviewing in their investment committee presentations supported a value closer to $1 billion than one of $5 billion for Outcome Holdings (see Exhibit 2.1.2 of the Saba Initial Report).

7. For those reasons, the $5 billion valuation provided in the Gupta Affidavit is not, in my view, a reliable indication of the company's equity value as of the date of Goldman Sach's investment before adjustment for fraud. If, however, one were to assume such an inaccurate valuation, the result would be to increase both the value of the company that would have been available to cover the investors' fixed claim prior to the 2018 settlement and restructuring, as well as to increase the value delivered to investors as a result of the 2018 settlement beyond the approximately $26.6 million in value over their original investment reflected in my analysis.

8. The Gupta Affidavit, at par. 7, describes the 2018 post-restructuring waterfall in a way that is consistent with my understanding from review of documents, and with the manner in which I modeled this waterfall in my February 1, 2018 equity allocation model for Outcome Holdings LLC, as shown in the Saba Initial Report. However, I believe Mr. Gupta inadvertently flipped the order of the preferences—I understand that the $420.9 million preference to investors is *before* the 50% / 50% split of the next (rather than the first) $1.55 billion in company equity value between investors and founders.[1] Any excess over that amount is split 66% to the founders / 33% to the investors.

---

[1] 3rd OHLLC Agreement, Article V, Sec. 5.1 and Article I Definitions.

9. The Gupta Affidavit, at par. 10, states that Goldman Sachs adjusted their initial $100 million investment down to approximately $22 million by December 31, 2018, implying that the overall value of Outcome Holdings is substantially lower at the end of 2018 than in my calculation of value as of February 1, 2018.[2] However as of that date, Outcome Holdings had not incurred losses that followed for next 11 months, and had not experienced revenue erosion at the level demonstrated by end of calendar year 2018.[3] It would therefore be inappropriate to consider post-hoc developments in determining a valuation as of a certain date. Instead, any valuation must be made based upon the information that would have been available to investors at the time. I also note that Mr. Gupta does not apportion the Goldman Sachs write-down between the effect of the fraud and the effects of other factors, such as the AccentHealth acquisition.

10. The Gupta Affidavit, at par. 9 and 25, appears to confirm that Goldman Sachs had marked down their restructured investment by approximately 90% by December 31, 2023, and had lost their preferential rights in the May 2019 Restructuring, which contributed to this reduction in value. As I understand it, this is the basis for the Government's claim of investor loss figure, as opposed to an assessment of the value of their investment on any of the Valuation Dates.

---

[2] As stated in the Saba Initial Report, I have made the reasonable assumption based on my review of the available evidence and given the absence of updated financial forecasts as of that date, that investor forward outlook would not have fundamentally changed as of that date, as compared to the forecasts that investors relied on for the 2017 financing.

[3] The financial records provided to me do not include monthly financial statements past November 2017.

Dated: June 24, 2024

_____
Carl S. Saba, MBA, CVA, ASA, ABV