UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES<br>Plaintiff | : | Case Number: 0752 1:19 CR00864-2 |
| v. | : | |
| SHRADHA AGARWAL<br>Defendant | : | |

## SUPPLEMENTAL DECLARATION OF MAUREEN PATRICIA BAIRD

I, Maureen P. Baird, declare that the following statements are true:

1. I am providing this declaration as a supplement to my previous declaration submitted on June 10, 2024.

2. A summary of my background and CV were included with my original declaration and my credentials remain the same; however, for efficiency purposes I have attached my CV to this report as Exhibit A.

3. This supplemental declaration is prepared at the request of Patrick Blegen, of Blegen & Associates, who is representing Shradha Agarwal. Ms. Agarwal is scheduled to be sentenced this week in the Northern District of Illinois. Mr. Blegen requested I provide an explanation of Bureau of Prisons' (BOP) policy regarding security classifications and prison designations for non-U.S. citizen federal offenders. More

specifically, Mr. Blegen asked that I opine on how BOP policy, as it relates to deportable aliens and non-U.S. citizen would impact Ms. Agarwal, if she receives a custodial sentence. Mr. Blegen requested I explain how Public Safety Factors (PSF) are applied by the BOP for non-U.S. citizen offenders and which category of federal inmates, if any, would be eligible for a PSF waiver to allow them to serve their prison sentence in a minimum-security level federal prison camp.

## BOP SECURITY DESIGNATION AND CUSTODY CLASSIFICATION POLICY PRECLUDES SHRADHA AGARWAL FROM PLACEMENT AT A MINIMUM-SECURITY LEVEL FEDERAL PRISON CAMP

4. In accordance with BOP policy, should a sentence of imprisonment be imposed for Ms. Agarwal she will not be eligible to serve her prison term at a minimum-security federal prison camp. Instead, she will be designated to a low-security facility where she will remain for the duration of her sentence. Absent a written decision by U.S. Immigration and Customs Enforcement (ICE) officials indicating Ms. Agarwal will not be deported, she will have no opportunity for transfer to a minimum level prison during her term of confinement. In the unlikely event that ICE officials decide Ms. Agarwal will not be deported and she has at least 18 months remaining to serve on her sentence, the BOP may transfer her to a less secure prison.

5. Program Statement 5100.08, Inmate Security Designation and Custody Classification, dated September 9, 2006, https://www.bop.gov/policy/progstat/5100_008.pdf is the sole policy utilized by the BOP for classifying recently sentenced defendants to determine and assign an appropriate prison designation. Between 1998-2000, during my career with the BOP, I was part of two workgroups established to rewrite the

Agency's Program Statement 5100.08, which is mostly identical, except a few non-substantive changes, to what is currently being utilized in 2024. For years, female offenders were classified using the same procedures as male offenders. The initial workgroup I was assigned consisted of a handful of BOP employees with correctional programs backgrounds like mine. We were tasked with formulating a separate classification policy for female offenders. The second workgroup consisted of a larger number of committee members who were tasked with completely revamping the classification and designation manual to assure a more concise and consistent application of policy.

6. Following sentencing, inmates are initially classified and designated for service of their sentence by staff assigned at the Designations and Sentence Computation Center (DSCC), in Grand Prairie, Texas. The documents utilized by the DSCC during the initial classification are the Presentence Investigation Report, Judgment in a Criminal Case, disciplinary record from prior or current commitment, and any additional, relevant documents originating from various law enforcement agencies.

7. Several factors are considered by BOP officials that comprise an offender's security classification. Some of the factors that impact classification include age, pending charges/detainers, seriousness of current offense, history of violence and escape, sentence length, and voluntary surrender status. Each of these areas have a corresponding point value, which is then totaled to determine an inmate's overall security level. In the case of Ms. Agarwal, based on her background and other considerations, her total security points would indicate her classification as minimum security. However, points alone do not determine security level classification, as the

BOP also relies on Public Safety Factors (PSF) to assess an offenders' security needs. PSFs and MGTVs were non-existent in the previous versions of the classification and designations policy and originated because of our workgroup's research and suggestions.

8. Management Variables (MGTV) and PSFs were created to account for additional security considerations which are not captured in other categories. MGTVs and PSFs are used to justify an inmate's designation to an institution which is not commensurate with the numeric security point total. There are specific factors, which if applicable to an inmate, would indicate the need for increased security. In most cases, the PSFs impact the inmate's security level, causing an increase that overrides the security point score. For instance, if the BOP were to complete a security classification for Ms. Agarwal, the PSF of Deportable Alien will be applied, thus flexing her security level up from minimum security to low security.

9. Program Statement 5100.08, Chapter 5., Page 9., Section H., states the PSF of Deportable Alien will be applied to all offenders who are not citizens of the United States. Policy requires placement at a low security level institution for those inmates who are assigned this PSF. This section further states, "The PSF shall not be applied, or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive Office for Immigration Review (EOIR) have determined that deportation proceedings are unwarranted or there is a finding not to deport at the completion of deportation proceedings."

10. I understand there has been some information provided to the Court regarding how a PSF of Deportable Alien would impact Ms. Agarwal and whether she would be eligible

for a PSF waiver at some point if a prison sentence were imposed. Prior to the creation of PSFs and MGTVs, there existed the possibility, albeit rare, for non-U.S. citizen offenders to be afforded the opportunity to serve their prison sentence in minimum-security level camp facilities. However, since the issuance of the revised Program Statement which became effective in September 2006, I have not witnessed a single offender receive a PSF-Deportable Alien waiver. I have also never witnessed a non-U.S. citizen defendant's designation to a camp during the initial stage of classification or at any point during their incarceration.

11. As Correctional Programs Administrator in the BOP's Western Regional Office between 2005-2007, prior to the existence of the DSCC, my department was responsible for classifying recently sentenced defendants. Amongst other duties, my department was also responsible for all PSF waivers of inmates assigned to the 22 federal prisons which comprised the Western Region. During this time, I do not recall one case of a request from an institution for waiver of the Deportable Alien PSF. I also do not recall an instance while working in the Regional Office where a Deportable Alien PSF was waived and an MGTV applied.

12. As the former Warden of the Federal Correctional Institution Danbury, Connecticut (2009-2014), we had many non-U.S. citizen female offenders at the facility. At no time did a request for a PSF waiver cross my desk nor did I witness any non-U.S. citizen inmate be approved for transfer to a minimum-security level camp. Likewise, having worked in various capacities at many federal prisons which housed numerous non-U.S. citizen offenders over my 27-year BOP career, I have never seen an inmate be successful through the Administrative Remedy process or by any other method, in

having the PSF of Deportable Alien waived or removed. An offender's conduct and programming in prison, regardless of how pristine and noteworthy, had no bearing on a PSF waiver for Deportable Aliens. The same circumstances apply today as the applicable policy and BOP's stance on this topic remains unchanged.

Executed on this 26th day of June 2024

_____

Maureen P. Baird

EXHIBIT A

# Maureen Patricia Baird

mbaird@expertprisonconsultants.com

618-694-7703

Professional Profile

I currently work as a Corrections Consultant, specializing in the area of Federal Corrections. I have provided Expert Witness testimony in United States District Courts, at Sentencing Hearings for defendants who are facing a sentence of incarceration in the Federal System. I work as an independent Consultant and provide consulting services on all aspects of the Federal Prison System for private attorneys, Federal Defenders Offices and individuals and family members of those facing a possible federal prison sentence or those who have already been sentenced/incarcerated. I have prepared numerous Declarations for Attorneys within the U.S., and for Barristers/Solicitors in the United Kingdom, working on extradition cases. I have also provided Expert Testimony at Extradition Hearings in the Westminster Magistrates' Court in the UK regarding conditions of confinement in the Bureau of Prisons.

My career in Adult Male/Female Corrections spanned close to 28 years with the Bureau of Prisons in various capacities, with my final positions as Warden and Senior Executive Service Warden at three Federal Prisons that encompassed a variety of missions and programs. I am an experienced Executive in Correctional Management with a demonstrated history of working in the law enforcement industry.

My experience in Federal Corrections began in 1989 as a case manager with the Department of Justice, Federal Bureau of Prisons. Throughout my 28 years with the Agency, I continued to acquire positions of increasing responsibility. In 2009, I was appointed to the position of Warden at the Federal Correctional Institution, Danbury, Connecticut, and was later promoted to Warden at the Metropolitan Correctional Center in New York City. There, I was appointed to Senior Executive Staff by the United States Attorney General and within two years, I was transferred to a position of greater responsibility as the Warden of the United States Penitentiary in Marion, Illinois. As warden, I was responsible for the leadership and direction of 300 to 350 staff members and approximately 1200 to 1500 inmates. During my tenure as warden for seven years, I was responsible for staff development and various specialized inmate housing units, including a high security management unit which mainly housed international terrorists who were assigned maximum custody. I led staff through a mission change at the Federal Prison in Danbury, where we had housed female offenders for several years and then transitioned to male offenders in 2013. I was also a member of the Joint Terrorist Task Force, and a member of various other federal, state, and local groups. I was very active with joint training that involved local, state, and

federal law enforcement entities. For the last several years I have held Top Secret Clearance, only issued to a small percentage of Wardens and Executive Staff.

## Maureen Baird: Professional Experience

### *Warden Dec 2015 - Oct 2016 United States Penitentiary - Marion, IL*

- - CEO of an institution which housed 1500 medium/high security male offenders
- - Supervised 350 staff members and responsible for a multi-million-dollar budget
- - Oversaw all aspects of the institution and staffing, inmate programs, institution security, staff training, staff and inmate investigations and discipline, policy and procedural changes, community relations, regular training on emergency preparedness

- Provided training to all institution staff during an annual refresher training for six to eight weeks
- Provided training to new hires regarding procedures, rules, and regulations, ethics, and code of conduct requirements and both basic and advanced correctional duties

### *Warden Jun 2014 - Dec 2015 Metropolitan Correctional Center - New York City, NY*

- CEO of a pre-trial federal prison which employed 350 staff and housed 700 all security level, pre-trial inmates and 150 low security sentenced offenders
- Performed all duties indicated above as warden at USP Marion, Illinois

### *Warden Oct 2009 - Jun 2014 Federal Correctional Institution - Danbury, CT*

- - CEO of an institution which employed 250 staff and housed 1200 female offenders
- - Performed all duties indicated above as warden at USP Marion, Illinois, with an added emphasis on training geared toward female offenders

### *Correctional Institution Administrator/Associate Warden Aug 2007 - Oct 2009*

### *Metropolitan Detention Center - San Diego, CA*

- - Provided direction and leadership to 230 employees
- - Assisted in the management of a 27-million-dollar budget
- - Oversaw high security/maximum custody pre-trial inmates and 200 low security sentenced inmates

- Ensured all mandatory internal and external security requirements were maintained and properly implemented

8

- - Served on a forward-thinking workgroup focusing solely on future training trends
  - Provided training on a regular basis to institution staff as well as other government agency staff

- Implemented several new proactive security measures which resulted in a more open form of communication between staff and inmates, thus allowing staff to find more contraband and providing a safer environment for staff and inmates
- Worked with union representatives to assist in resolving employee concerns as the Chairperson of the Labor Management Relations Board

### *Regional Correctional Programs Administrator Feb 2005 - Aug 2007*

### *Bureau of Prisons, Western Regional Office - Dublin, CA*

- - Oversaw 22 federal prisons located in the Western Region of the United States
  - Primarily focused on the development and training of correctional programs staff who were employed by the individual facilities

- Orchestrated on-site training at the institutions, ensured the staff were familiar with policy, provided guidance, and compiled a report following each training

- - Assembled a training manual for all new case managers to assist them in their duties
  - Conducted regional training with all case management coordinators from the 22 institutions on an annual basis

- Was appointed to various after-action committees to investigate serious incidents that occurred at the prisons within the region

- - Acted in the position of Regional Director and Deputy Regional Director multiple times
  - Participated in and coordinated several Institution Character Profiles to evaluate programs and review security procedures at various institutions Recommendations were made with regards to enhancing security or reorganizing programs.

- Was involved in the activation of all aspects of newly constructed federal prisons within the Western Region
- Coordinated a four-week online training session for case management coordinators to provide information/training on their new responsibilities through the merging of the Inmate Systems Department falling under their purview
- Received the Supervisor of the Year award from the Regional Director in June 2006

### *Correctional Institution Administrator/Executive Assistant Aug 2000 - Feb 2005*
### *Federal Correctional Institution - Schuylkill, PA*

- Planned, supervised, and evaluated programs, training of new staff, and quarterly training of correctional officers

- - Was the Chairperson for inmate's initial classifications and program reviews
- - Conducted ongoing training and guidance for mentors and proteges as the Mentoring Coordinator

### *Assistant Correctional Programs Administrator Apr 1997 - Aug 2000 Bureau of Prisons, Northeast Regional Office - Philadelphia, PA*

- - Committee Member
- - Assisted in designing the current Security and Classification System utilized for classifying sentenced female offenders

    o Performed extensive research which suggested a need for a separate classification system for male and female offenders

    o The Bureau of Prisons compiled our findings and in a short time implemented the Committees' suggestions and created a separate Classification System for female offenders, which is still being utilized to date

- Coordinated and conducted annual training programs for all case management coordinators throughout the 23 institutions that comprised the Northeast Region

    - - Submitted recommendations for policy changes which were adopted and implemented
    - - Conducted on-site staff assistance visits at various institutions to provide training to staff
    - - Participated in after-action reviews following significant incidents at institutions within the region

### *Case Management Coordinator Dec 1992 - Apr 1997 Federal Correctional Complex - Allenwood, PA*

- Served as Victim Witness Coordinator, Central Inmate Monitoring Coordinator, Inmate Performance Pay Coordinator and Public Information Spokesperson for the institution
- Oversaw security with regards to review and approval of inmates designated to the institution

- Wrote lesson plans and provided on-the-job training for new case managers and new counselors
- Provided ongoing training to all case managers, counselors, unit secretaries, and correctional officers regarding correctional programs, procedures, and responsibilities

- Was responsible for quality control of all case management paperwork prior to submission to the warden for signature

*Assistant Parole Liaison Administrator Oct 1991-Dec 1992*

*Mid-Atlantic Regional Office – Annapolis Junction, MD Duty Station – U.S. Parole Commission – Chevy Chase, MD*

- Was responsible for Security Classifications and Designations of parole violators returning to federal prison

*Case Manager Mar 1989 – Oct 1991*

*Federal Correctional Institution - Danbury, CT*
*Federal Prison Camp – Nellis Air Force Base - Las Vegas, NV*

- Oversaw programs related to the 150-200 inmates assigned to my caseload
- Provided training to new case managers
- Conducted inmate classification and program reviews
- Assisted inmates with their release planning
- Provided guidance to inmates
- Conducted security and shakedowns within the institution
- Regularly filled in for correctional officer posts
- Wrote all reports pertaining to inmates on my caseload
- Regulated institution security and housing

## Education

*Western Connecticut State University – Danbury, CT*
*Bachelor of Science in Justice and Law Administration, May 1988*

- Recipient of Justice and Law Administration Award of 1988 **Activities**

- Senior Executive Service Member
- Member of American Correctional Public Information Officer Association
- Member of Lion's Club
- Member of Association of Women Executives in Corrections
- Instructor/Trainer
- Volunteer for the American Cancer Society

11