UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No.  19 CR 864-1 |
| v. | |
| RISHI SHAH | Judge Thomas M. Durkin |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR BOND PENDING APPEAL**

The UNITED STATES OF AMERICA, by and through its attorneys, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, and GLENN S. LEON, Chief of the Fraud Section of the Criminal Division, United States Department of Justice, hereby files this response in opposition to defendant Rishi Shah's motion for bond pending appeal. Defendant has not met his burden to show that his appellate case presents a "substantial question" such that it should be treated differently from nearly every other criminal case on appeal. Accordingly, his motion should be denied.

## I.      Introduction

Defendant was convicted at trial on six counts of mail fraud (Counts 1-2, 4-5, 11, and 25), nine counts of wire fraud (Counts 14-19, 22, 24-26), two counts of financial institution fraud (Counts 9 and 13), and two counts of money laundering (Counts 10 and 12). On June 25, 2024, this Court sentenced defendant to 90 months' imprisonment. (Docket #805.) The Court set defendant's report date as September 26, 2024. (*Id.*)

After sentencing, and after filing a notice of appeal, defendant filed the instant motion for bond pending appeal. In his motion, he argues that his appeal presents three substantial questions. First, defendant contends that the government's pretrial over-restraint of assets violated his Sixth Amendment rights. Second, he claims that his Fifth Amendment rights were violated by testimony

that the government presented to the grand jury. Third and finally, he argues that the Court erred at trial by admitting grand jury statements of three witnesses as prior consistent statements.

The Court properly considered and rejected each of defendant's arguments, and they do not constitute substantial questions for his pending appeal. Accordingly, defendant has failed to meet his burden under 18 U.S.C. § 3143(b), and his case should be treated no differently than any other case where a conviction is followed by an appeal. Such a result is not only compelled by a proper application of the law to the facts, but it is also consistent with the strong statutory presumption against bond pending appeal, a presumption that Congress enacted in recognition of the basic principle that convictions are presumed to be correct and out of concern that the release of convicted defendants and the lack of swift and certain execution of sentences will undermine the deterrent effect of the criminal law. Such considerations take on greater importance in cases, such as this one, where there is significant public interest.

## II.     Standard of Review

In 1984, Congress enacted 18 U.S.C. § 3143(b) for the purpose of reversing the previously applicable presumption in favor of granting convicted defendants bond pending appeal. *United States v. Bilanzich*, 771 F.2d 292, 298 (7th Cir. 1985). Under § 3143(b), rather than permitting defendants who appeal their convictions to be released on bond as a routine matter, bond pending appeal may be granted only based on "'an affirmative finding that the chance for reversal is substantial.'" *Id.* (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 27, reprinted in U.S. Code Cong. & Ad. News 3182, 3210).

The change Congress enacted, which established a presumption of confinement pending appeal, "gives recognition to the basic principle that a conviction is presumed to be correct." *Id.* (internal quotation marks omitted). The change in the law also reflects Congress's observation that

2

"[r]elease of a criminal defendant into the community after conviction may undermine the deterrent effect of the criminal law, especially in those situations where an appeal of the conviction may drag on for many months or even years." S. Rep. No. 225, 98th Cong., 1st Sess. 26, reprinted in U.S. Code Cong. & Ad. News 3182, 3209. As the Seventh Circuit has noted, Congress recognized "that harm results not only when someone is imprisoned erroneously, but also when execution of sentence is delayed because of arguments that in the end prove to be without merit." *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986). Consistent with the shift in the presumption, the revised statute "requires the defendant, not the government, to shoulder 'the burden of showing the merit of the appeal.'" *Bilanzich*, 771 F.2d at 298 (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 27 n.86, 1984 U.S. Code Cong. & Ad. News 3182, 3210 n.86). This assures "that post-conviction bail is confined to those who are among the more promising candidates for ultimate exoneration." *Shoffner*, 791 F.2d at 589.

With this legislative history and intent as background, § 3143(b)(1)(B) provides that a defendant who is not a flight risk or a danger to the community, and who has been sentenced to a term of imprisonment, "shall" be detained pending appeal, unless a court finds that the appeal "raises a substantial question of law or fact likely to result in – (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." "This is an exacting standard." *United States v. Harris*, 942 F.2d 1125, 1135 n.7 (7th Cir. 1991).

For an appeal to raise a "substantial" question, it must "present[] a close question or one that very well could be decided the other way." *Shoffner*, 791 F.2d at 589. "In its particular statutory context 'substantial' must . . . mean that the appeal could really go either way, that it is a

3

toss-up or nearly so." *United States v. Greenberg*, 772 F.2d 340, 341 (7th Cir. 1985). Analysis of whether the question of law is "close" should be "left to a case-by-case determination," *Bilanzich*, 771 F.2d at 299, with special attention paid to the district court's analysis of the question at earlier stages of the proceedings, *Shoffner*, 791 F.2d at 589.

Even if a question is determined to be substantial, or close, the defendant also must show, as a second step, that "assuming that the question is decided in the defendant's favor, the appellate court is more likely than not to reverse the conviction or order a new trial . . . ." *Bilanzich*, 771 F.2d at 298. In other words, release under § 3143(b) "'requires an affirmative finding that the chance for reversal is substantial.'" *United States v. Ashman*, 964 F.2d 596, 599 (7th Cir. 1992) (quoting *Bilanzich*, 771 F.2d at 298).

## III.    Defendant Has Failed to Establish that Bond Pending Appeal is Warranted

The government does not contend that defendant is a flight risk or danger to the community. Accordingly, the relevant inquiry is whether defendant has met his burden in raising a substantial question likely to result in a reversal or new trial. He has not. The Court has previously and properly rejected the arguments defendant raises in his motion. Those arguments do not represent questions that could go either way or could be called a "toss up." Thus, denial of defendant's motion is warranted.

### A.    Defendant fails to raise a substantial question about his Sixth Amendment right to counsel claim.

The Court extensively considered and properly rejected defendant's first claim—that the government's over-restraint of assets violated his Sixth Amendment right to counsel of choice. (Docket #747.) In its written opinion, the Court noted that this claim was forfeited because defendant could have raised the issue prior to trial but did not do so. (*Id.* at 10-19.) On the merits, the Court noted that the over-restraint did not include enough liquid assets to allow defendant to

4

retain his supposed counsel of choice, William Burck from Quinn Emanuel. (*Id.* at 30.) As the Court found, without the funds necessary to retain Burck, there was no constitutional violation because the Sixth Amendment right to choice of counsel is limited to counsel that the defendant *can afford to hire*. (*Id.* at 19-20.) The Court's analysis is entirely correct and does not raise a substantial question.

Defendant attempts to undercut the Court's ruling in several ways, all of which fail. First, he raises again an issue debated during the briefing in this case, namely, what is the controlling opinion of the Supreme Court following *Luis v. United States,* 578 U.S. 5 (2016). That, however, does not raise a substantial question because the Court's ruling is consistent with either Justice Breyer's plurality opinion or Justice Thomas' concurrence. In its ruling, the Court cited both Justice Breyer's plurality opinion and Justice Thomas's concurrence for the proposition that "a defendant only has a Sixth Amendment right to be represented by an attorney that he or she can afford to hire." (Docket #747, at 20, *citing Luis*, 578 U.S. at 12 and 34.) Because, as the Court found, defendant would not have had the funds needed to retain Burck even absent the over-restraint, there was no interference with the Sixth Amendment right to choice of counsel under either the plurality or concurrence in *Luis*.

Justice Thomas's concurrence in *Luis* took issue with what he called the plurality's "balancing test," in which the plurality stated that the defendant may use his own untainted assets to pay for counsel but only up to an amount constituting a "reasonable fee." *Compare Luis*, 578 U.S. at 22-23 *with* at 33. This Court did not rely on that part of the plurality's opinion in finding against defendant—never reaching the issue of whether defendant had a *bona fide* need for the funds because the amount of the fee was not reasonable. Instead, this Court correctly held that regardless of whether Burck's fee was reasonable, defendant would not have had sufficient assets

to hire him even if there had been no over-restraint. Thus, in Justice Thomas's words, defendant would not have had assets "necessary to exercise [his Sixth Amendment] right" but instead would have been "insist[ing] on representation by an attorney he cannot afford." *Id.* at 34.[1]

Next, defendant attacks the Court's ruling by arguing that the over-restraint deprived him of his ability to potentially hire counsel of choice other than Burck. This is contrary to his prior briefing and arguments, which claimed that Burck was his counsel of choice. (*See, e.g.*, Docket #491 at 1.)

There is no evidence in the record supporting the idea that the over-restraint impaired defendant's ability to hire someone other than Burck. Defendant cites one sentence from Burck's testimony at the evidentiary hearing, but it does not support his claim. In response to a question about whether other attorneys were willing to represent defendant, Burck responded by saying, "I do not know." (Docket #726, 5/8/24 T. Tr. at 951.) Burck also testified that one lawyer, James Bennett, expressed concern about taking defendant's case for $2 million. (*Id.*) There is no evidence in the record that Bennett or any other attorney refused to take defendant's case for the $4 million that defendant had available to pay for counsel. (Docket #747 at 22.) Defendant has failed to meet his burden on this claim, and it is not a substantial issue.

On this note, there is also no evidence in the record to support defendant's claim that he "settled" on Hueston Hennigan because that firm was the "only" one willing to accept potential proceeds of sales from illiquid assets. *See* Def. Motion at 7-8. The citations on page 7 of defendant's motion support only that Quinn Emanuel would not accept proceeds of sales of illiquid

---

[1] The Court further distinguished *Luis* for several other reasons. First, *Luis* dealt with a challenge to the protective order prior to trial, not a post-trial challenge that defendant could have raised earlier. (Docket #747 at 30.) Second, defendant spent millions on private counsel, but did not have enough, even without the over-restraint, to hire Quinn Emanuel. That is much different than the situation in *Luis*, where the government's restraint completely denied the defendant her right to counsel. (*Id.*)

assets, and he provides no citation to his assertion on page 8 that Hueston was "the only attorney who was willing to accept full payment of his flat fee over time . . . ." Nothing in the record supports these statements.

Defendant also seeks to challenge the Court's conclusion that the relevant time frame for considering the effect of the over-restraint ended June 30, 2020, the date defendants requested as a deadline to secure counsel. This also is not a substantial issue. Defendant himself framed the issue as involving that date in his reply brief. (Docket #537 at 18.) The time frame from the date of the indictment in November 2019 to June 30, 2020, was the time period when defendant was seeking to retain Burck for trial. The Court correctly concluded that, even if there was no over-restraint, defendant did not have the funds needed to retain Burck during this time frame.

Moreover, if that time frame was extended, the government presented evidence that defendant had substantial amounts of money to retain counsel following the June 2020 date and up to several months before the trial. *See, e.g.*, GX 2013, 2048, 2061. That defendant ultimately retained Hueston Hennigan in June 2020 and used that firm at the January 2023 trial, even after receiving substantial additional funds, shows that this firm was his counsel of choice for trial.

Defendant further challenges the Court's conclusion that he could not afford to pay Burck by June 2020. He maintains, as he did at the evidentiary hearing, that he could have sold interests in various private equity funds had they not been restrained. In addressing this argument, the Court correctly concluded that there was insufficient evidence supporting the claim. (Docket #747 at 23-29.) That ruling does not raise a substantial issue. The Court noted that testimony from defendant's expert on this front was speculative, that defendant's interests in these investments were subject to transfer restrictions, and that any such sales would have been forced sales during the market turmoil at the onset of the pandemic. (*Id.* at 26-29.) Further, the Court referenced defendant's own

7

affidavit from earlier in the case, wherein defendant discussed the challenges in liquidating these types of investments. (*Id.* at 27-28.) Specifically, in his affidavit, defendant stated that it took him six months to sell a private equity investment in "unique" circumstances, which constituted the "only" time he sold interests in a private equity investment, and that those were "ideal" circumstances. (*Id.*) There would have been no unique or ideal circumstances in attempting to sell interests during the November 2019 to June 2020 time period.

Finally, the Court correctly found that defendant had forfeited his Sixth Amendment claim. That does not raise a substantial issue. Defendant had all the information needed to raise a claim about any potential over-restraint prior to trial, including grand jury transcripts and exhibits detailing the government's tracing and forfeiture theory.

Since defendant's argument was forfeited, it will be reviewed on appeal for plain error. This is a "demanding" standard, *United States v. Marzette*, 105 F.4th 1014, 1020 (7th Cir. 2024), that substantially diminishes the likelihood of success of any appeal. Plain error review requires (1) "error"; (2) that is "plain"; (3) that "affect[s] substantial rights;" and, if all those conditions are met, an appellate court has "discretion" to remedy the error if it (4) "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993). Defendant has "the burden of establishing entitlement to relief for plain error." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). "Satisfying all four prongs of the plain-error test 'is difficult.'" *Greer v. United States*, 593 U.S. 503, 508 (2021) (*quoting Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Defendant claims that the Supreme Court has indicated that structural errors may always require reversal no matter the standard, pointing to dicta in *Greer*, 593 U.S. at 512-13. But the Supreme Court has squarely ruled otherwise. *See Johnson v. United States*, 520 U.S. 461, 466

(1997) (rejecting claim that "structural" error is outside of Rule 52(b) plain error analysis: "But the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure."); *see also United States v. Maez*, 960 F.3d 949, 957 (7th Cir. 2020) ("Even structural errors remain subject to the fourth and discretionary plain-error test."); *United States v. Anderson*, 881 F.3d 568, 572 (7th Cir. 2018) (noting that the Supreme Court in *Johnson* "held that the plain error standard applied to errors for which no objection was made at trial, including structural errors."); *United States v. Turner*, 651 F.3d 743, 747-48 (7th Cir. 2011) (reviewing deprivation of Sixth Amendment right to counsel of choice argument under plain error).

Even if defendant could show an error that was plain, and even if his right to choice of counsel is structural and, therefore, potentially automatically satisfies the third prong of the plain error test, *see Maez*, 960 F.3d at 957, he will not be able to establish element 4—that any forfeited error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 962 (comparing fourth prong to a "miscarriage of justice" or "a substantial risk of convicting an innocent person"). As the Court has repeatedly noted, counsel for defendant at trial did an extraordinary job in their advocacy and representation. (Docket #747 at 3; Docket #620, 4/5/23 Tr. Transcript at 10454-55.) Per the Court's comments, defendant received better representation than nearly all defendants in federal criminal cases. (Docket #747 at 43: "Defendants received what is indisputably the highest quality representation a criminal defendant can receive."). Thus, there is no basis to conclude that any error affected the fairness, integrity, or public reputation of judicial proceedings. In fact, the reversal of the conviction will have that effect under these circumstances. *See Johnson*, 520 U.S. at 470 (affirming conviction and declining to notice forfeited error treated as structural: "No miscarriage of justice will result here if we do not notice the error.").

9

**B.    The Court correctly ruled that the government did not violate defendant's Fifth Amendment rights.**

After an extensive evidentiary hearing, and after the Court-ordered production of numerous government internal communications, and testimony and declarations from various government employees, including prosecutors who participated in the trial, the Court concluded that the government did not knowingly present any false testimony to the grand jury or know that the protective order in this case was overbroad. As a result, the Court ruled that there was no violation of defendant's Fifth Amendment rights. That ruling does not raise a substantial appellate issue.

Defendant's argument that the Court should apply a "collective" knowledge theory to his Fifth Amendment claim makes no sense. Defendant compares this case to cases involving *Brady* or *Giglio* issues. Those are scenarios in which collective knowledge can be imputed to the government because of the informational advantage that the government has over defendants. But even in those scenarios, there are no *Brady* or *Giglio* violations when a defendant has access to the relevant information. Here, defendant was "equally if not better positioned to realize [the over-restraint] and bring it to the attention of the Court well before [he was] tried and convicted." (Docket #747 at 41.)

In support of his collective knowledge argument, defendant cites *United States v. Mann*, 140 F. Supp. 3d 513, 539 (E.D.N.C. 2015), but in that case the court refused to dismiss an indictment absent a showing that the government acted in bad faith or that its actions substantially influenced the grand jury's decision to indict. *See also United States v. Fountain*, 840 F.2d 509, 513 (7th Cir. 1988) (reserving the possibility that knowing use of perjured testimony, amounting to *trumped-up charges*, might justify dismissal of an indictment) (emphasis added). This Court repeatedly has recognized that the government did not act in bad faith because no one knew of any inaccurate grand jury testimony, and no one knowingly failed to disclose that nontraceable assets

were being restrained. (*See* Docket #747 at 34 and 42.) Also, the testimony at issue related to forfeiture allegations, not the elements of the offense, so it could not have influenced the grand jury's decision to indict.

Defendant also appears to challenge, as a factual matter, the Court's conclusion that no government employees knew of the over-restraint. However, that factual determination is unlikely to be reversed on appeal, so it is not a substantial issue. *See United States v. Han*, 105 F.4th 986, 991 (7th Cir. 2024) (factual determinations reviewed for clear error). Defendant also relatedly claims that government employees had the information necessary to learn of the over-restraint, but that argument essentially boils down to a claim that the government made a mistake. "[A] mistake is different than misconduct." (Docket #747 at 40-41.)

As this Court found, there was no evidence whatsoever of any government misconduct. No government witness knowingly presented false testimony to the grand jury, and no one was aware of the over-restraint or concealed it. Absent such evidence of bad faith, intent, or even knowledge, defendant's Fifth Amendment Due Process claim fails. There is no substantial issue here.

###     C.    The admission of grand jury statements at trial does not raise a substantial appellate question.

At trial, the Court granted the government's motion to admit prior consistent statements of three witnesses, Jason Ketchum, David Ma, and Ashik Desai, under Federal Rule of Evidence 801(d)(1)(B). (Docket #373, 383, 406.)  The prior consistent statements were grand jury statements of each witness. Defendant claims that there are substantial issues on appeal likely to result in a new trial regarding both the admission of the statements in general and the scope of the statements.

To start with, evidentiary rulings are reviewed for an abuse of discretion. *See Han*, 105 F.4th at 993. Reversal is appropriate "only where no reasonable person could take the view adopted by the trial court." *United States v. Howard*, 692 F.3d 697, 703 (7th Cir. 2012). The Court can and

should consider the standard of review in determining whether this issue is substantial and likely to result in reversal of the conviction or a new trial. *See United States v. Warner*, No. 02 CR 506, 2006 WL 2931903, at \*6 (N.D. Ill. Oct. 13, 2006) ("Accordingly, the court will, when determining if a question raised by Defendants is 'substantial,' consider whether this court's previous resolution of the question was committed to its discretion.").

Under Rule 801(d)(1)(B), a declarant-witness's prior statement is admissible as non-hearsay testimony:

> If the declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is consistent with the declarant's testimony and is offered (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground.

For each of the three witnesses, the Court provided oral rulings and written orders detailing the Court's grounds and reasoning. (Docket #373, 383, 406.) The Court explained why the statements were admissible under Rule 801(d)(1)(B) and conducted a proper balancing under Rule 403.

For Ketchum and Ma, the Court found that their grand jury statements were admissible to rebut that the witnesses had recently fabricated their testimony at trial or acted from an improper influence or motive and to rehabilitate their credibility having been attacked on other grounds. The Court found numerous instances where the defendants attacked these witnesses' credibility, including their immunity agreements and purported improper motive, faulty memory, inconsistency, and general bias. (Docket # 373 at 2, 383 at 3). The Court also redacted the grand jury statements as necessary, but allowed the remaining portions of the statements to be admitted given that the defendants broadly challenged these witnesses' credibility. As the Court noted,

12

admission of the redacted statements was needed to provide context for the prior consistent statements. (Docket #588, 2/8/23 T. Tr. at 1732; Docket #592, 2/15/23 T. Tr. at 2916-18.) And in any event, the Court heard from the parties and redacted to address issues the parties raised.

For Desai, the Court admitted his grand jury statement primarily under Rule 801(d)(1)(B)(i) because each "Defendant directly attacked Desai's credibility based on his plea deal, specifically that the Government will determine their sentencing recommendation based on their satisfaction with Desai's cooperation." (R. 406 at 3.) As the Court noted, the grand jury statement satisfied the requirement in *Tome v. United States*, 513 U.S. 150, 157 (1995) because the statement to the grand jury took place before the plea deal from the government. (R. 406 at 4.) "[Desai's] prior consistent statement to the grand jury thus rebuts the charge that his testimony on direct is the product of recent fabrication or improper influence or motive, at least since the time he made the statement to the grand jury." (*Id.*) The Court found that the "clear import to the defense of all three Defendants is that Desai has motive to lie because his trial testimony will affect the government's sentencing recommendation." (*Id.*) The Court also directly addressed one of the issues defendant raises in his motion: "To the extent Defendants challenge that Desai had a motive to lie in making his statements to the grand jury because he hoped to get a plea deal, that can be explored on re-cross examination." (*Id.* at 4-5.)

As to the scope of Desai's statement, the Court again determined that the excerpts of Desai's grand jury testimony "are generally consistent with Desai's direct testimony." (*Id.* at 2.) "While Desai may not have used the exact phrasing in the precise order on direct examination as he did in his grand jury statement, the grand jury statement substantively tracks his testimony on direct examination." (*Id.*)

13

Nothing described above is an error, much less an abuse of discretion presenting a substantial question. Defendant argues that, at least for Ketchum and Ma, they received letter immunity before their Grand Jury testimony, so the grand jury testimony does not rebut a charge of recent fabrication. This ignores, however, that his own lawyer extensively crossed Ketchum on his receipt of *statutory* immunity approximately one week before Ketchum's trial testimony. (*See* Docket #586, 2/6/23 T. Tr. at 1178-1181.) It also ignores that Ketchum's testimony was challenged on other grounds, thereby supporting admission of his statement under Rule 801(d)(1)(B)(ii). The same for Ma. As noted above, his credibility was challenged on other grounds, thereby making his statement admissible under Rule 801(d)(1)(B)(ii).

Defendant also argues that the cross examinations were focused on these witnesses' motive to lie, thereby making *Tome's* recent fabrication requirement applicable under even Rule 801(d)(1)(B)(ii). But this is not consistent with the cross examinations. The Court correctly noted that co-defendant Shradha Agrawal's counsel "highlighted Ketchum's faulty memory by showing Ketchum exhibits, including emails that he received, to suggest that his testimony on direct examination was based on an incomplete and inaccurate recollection of events." (R. 373 at 2.) Similarly, co-defendant Brad Purdy's counsel "more subtly suggested inconsistencies in Ketchum's testimony regarding Purdy's involvement in the alleged criminal scheme." (*Id.*) For Ma, "[e]ach defendant significantly attacked Ma's credibility on a variety of fronts, including improper motive, faulty memory, inconsistency and general bias against the defendants." (R. 383 at 3.) Because of the broad attack on these witnesses' credibility on a variety of grounds, the prior consistent statements were appropriately used to rehabilitate credibility on grounds other than the witnesses' motive to lie. (*See* Docket #588, 2/8/23 T. Tr. at 1705: noting Ketchum was attacked "not just on charges of recent fabrication, but they attacked him – they – you attacked him on a

14

variety of other reasons trying to please the government. But also, you know, just bad memory or incomplete preparation where he saw some emails and not others. His credibility was attacked, I thought, on a variety of reasons, not just the – a motive to fabricate something more recently from the – that occurred more recent than the prior consistent statement.").

Again, none of this is an error, but even if it was, it would be subject to harmless error review. The testimony from these witnesses was consistent with their grand jury statements. Defendant had every opportunity to cross examine these witnesses about both their testimony and their statements, and his counsel certainly did so extensively at the trial. Given that, along with the substantial amount of evidence the government submitted over the course of the multi-month trial showing defendant's involvement in and orchestration of the fraud, any error in the admission of these statements is harmless. The evidence against defendant was substantial and outweighed anything related to the admission of the statements.

## IV. Conclusion

For the above reasons, defendant's motion for bond pending appeal should be denied.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:     /s/ Jason A. Yonan
JASON A. YONAN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-0708

Dated: August 8, 2024

15