IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19 CR 864 |
| RISHI SHAH, et al., | Judge Thomas M. Durkin |
| Defendants. | |

**JOINT RESPONSE TO GOVERNMENT'S MOTION
TO PERMIT VIDEO TESTIMONY BY DEFENDANTS
RISHI SHAH, SHRADHA AGARWAL, AND BRAD PURDY**

Defendants respectfully oppose the Government's request to permit a witness located abroad, Ravi Gupta, to testify via videoconference during this Court's restitution hearing. As set forth below, the Government cites no case and no rule of court permitting remote video testimony under such circumstances. The Government provides no compelling justification requiring its proposed witness, a corporate representative of Goldman Sachs ("Goldman"), to testify at the hearing via video, as opposed to any of Goldman's thousands of U.S.-based employees. Even when compelling circumstances exist and a witness is "unavailable" to testify in person, the Federal Rules of Criminal Procedure call for a deposition to be conducted abroad, not for remote hearing testimony by video. Especially given the potential stakes for the Defendants—the Government evidently seeks to use Mr. Gupta's testimony to cure its prior failure at sentencing to establish any cognizable losses to investors and to impose hundreds of millions of dollars of restitution against the Defendants—this Court should not blaze a new trail by permitting a foreign witness to testify at a hearing without personally appearing in the United States, where he may be properly sworn and his testimony given under penalty of perjury under federal law.

1

## DISCUSSION

**I. Neither the Federal Rules Nor Any Precedent Identified by the Government Permits Video Testimony by a Witness Located Abroad in a Criminal Case**

The Federal Rules of Criminal Procedure provide a mechanism for obtaining the testimony of foreign-based witnesses. *See* Fed. R. Crim. P. 15(c)(3). Pursuant to the procedures set forth in Rule 15, this Court may grant a party's request to depose a foreign witness who is otherwise unavailable to testify in person, but only in "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). The procedures outlined by the Federal Rules provided the Government with every opportunity to depose Mr. Gupta to obtain his potential testimony, either for trial or for Defendants' sentencings, and yet it opted not to follow those procedures. Despite knowing that Mr. Gupta resides in London and a physical appearance in this Court may be inconvenient, the Government never sought permission from this Court to conduct a deposition of Mr. Gupta.[1]

Instead, the Government opted to informally interview Mr. Gupta—without the Defendants or their counsel present and without administering any kind of oath—and then request his remote video testimony because it claims he is not available to testify in court as required by the Federal Rules. *See* Fed. R. Crim. P. 26 ("In every trial the testimony of witnesses ***must*** be taken in open court, unless otherwise provided. . . .") (emphasis added). Although the federal rules do not expressly forbid remote testimony by video at a sentencing hearing, the Government has not cited, and Defendants have not found, a single rule or case that permits the Government to call a witness

---

[1] For a time, the CARES Act permitted certain sentencing proceedings to be conducted by video, but only upon a finding of "specific reasons" "in a particular case" that the sentencing "cannot be further delayed without serious harm to the interests of justice," and even then, only with the consent of the defendant. Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), H.R. 748, 116th Cong. § 15002(b) (Mar. 27, 2020). But the "emergency conditions" required to trigger that Act's provisions are no longer in force. *Id.* at § 15002(a).

located abroad to testify remotely by video over the objection of a criminal defendant. The default rule is that witnesses are required to provide live testimony in open court, and the Government should be held to that standard.

## II. The Government Cites No Compelling Justification for This Court to Grant the Government the Unprecedented Right to Call a Foreign Witness to Testify Via Video

The Government requests that Mr. Gupta be permitted to testify via video because he "lives in London and has work-related and personal commitments" that make it inconvenient for him to travel to Chicago. That is not a sufficient justification for this Court to forgo the ordinary requirement that all witnesses be required to testify in open court.

Goldman Sachs is a Fortune 50 company with over 43,000 employees and dozens of offices all over the world, including one in Chicago.[2] Despite having the option to call a corporate representative from right down the street, the Government insists that it must call Mr. Gupta, and no one else.[3] Nor has the Government alleged that Mr. Gupta is unable to travel, in ill health, or subject to any of the other conditions where courts commonly permit depositions in criminal cases. *See United Stated v. Groos,* 616 F.Supp.2d 777, 790 (N.D. Ill. 2008) (recognizing that a deposition in a criminal case should be "unusual" and only be permitted in extraordinary cases). The Government has known the date of the restitution hearing for more than a month, and it did not previously object to that date based upon Mr. Gupta's availability. *See* Minute Entry (Doc. #818).

---

[2] *List of "Fortune 500" companies,* 50PROS, https://tinyurl.com/GSFortune; *Goldman Sachs Group,* Forbes, https://tinyurl.com/GSEmployees; *Office Locations,* Goldman Sachs, https://tinyurl.com/GSLocations.

[3] Mr. Shah's counsel previously told the Government, in his response to its request, that he was "open to other approaches," including, as he suggested to the Government, that "Goldman identify a different corporate representative" who could appear in person. The Government responded to indicate it was "not aware of another witness who can substitute" for Mr. Gupta, and, "[e]ven if there were, [it] doubt[ed] that they could be prepared to testify to the matters that Mr. Gupta would cover by the time of the current hearing setting."

Any inconvenience to Mr. Gupta is caused by the Government's apparent insistence that he is the only person at Goldman that can testify on its behalf, not by the Defendants' exercise of their right to adequately cross-examine the witnesses against them.

### III. The Reliability of Mr. Gupta's Testimony Is in Doubt, Further Justifying Defendants' Request to Cross-Examine Him in Person, Subject to the Penalties of Perjury

The Government's request to present Mr. Gupta's testimony via video presents many concerns about the reliability of his testimony and Defendants' ability to effectively cross-examine him on complex issues that could have a lasting impact on Defendants' futures. The restitution hearing in this case will decide whether the Defendants complete their custodial sentences debt-free or be saddled with millions (perhaps hundreds of millions) of dollars in restitution that will destroy their future creditworthiness.

Defendants' counsel have reviewed both Mr. Gupta's original "affidavit" (which was not notarized nor signed under penalty of perjury), *see* Aff. (Doc. #778-1 at 52–58), and his most recent interview (which was neither conducted under oath or in the presence of defense counsel), and both contain substantial inaccuracies that call into question Mr. Gupta's reliability as a witness. *See, e.g.*, Rpt. (Doc. #787) (supplemental report by C. Saba discussing inaccuracies in Gupta "affidavit"). While Seventh Circuit precedent permits this Court to consider otherwise inadmissible evidence such as hearsay during sentencing proceedings, the Court must first deem that evidence reliable, which depends on the defendant's ability to impeach the reliability of that evidence. *United States v. Mayberry,* 272 F.3d 945, 949 (7th Cir. 2001) ("A sentencing court may consider hearsay evidence so long as it is reliable *and* the defendant has the opportunity to rebut it." (emphasis added)). Here, in addition to Mr. Gupta's prior misstatements, the potential of many millions of dollars in restitution for his employer provides a powerful incentive for Mr. Gupta to testify favorably to the Government. Defendants are therefore well within their rights to insist his

examination be conducted in person.

Indeed, numerous courts have recognized that, as least as far as the constitutional right to confrontation is concerned, remote testimony by video is no substitute for face-to-face cross-examination. *See Coy v. Iowa,* 487 U.S. 1012, 1016 (1988) ("We have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses . . . ."); *accord United States v. Yates,* 438 F.3d 1307, 1312 (11th Cir. 2006). Although the Government correctly notes that the Seventh Circuit has previously refused to apply the Confrontation Clause to sentencing proceedings (which Defendants reserve the right to challenge), the animating principles behind the Confrontation Clause still strongly militate in favor of requiring the in-person examination of Mr. Gupta. *Mattes v. Gagnon,* 700 F.2d 1096, 1101 (7th Cir. 1983) (noting that in-person confrontation "[e]nables the trier of fact to directly observe the demeanor of the witness in evaluating his credibility and render[s] less likely false accusations by the witness due to the presence of the accused and the solemnity of the occasion").

Even assuming that counsel for Defendants could effectively cross-examine Mr. Gupta and impeach his reliability without his physical presence, there are substantial questions about this Court's jurisdiction over Mr. Gupta should he be found to have spoken falsely in his testimony. Defendants have found no instance in which a foreign witness effectively submitted to a court's jurisdiction over video in a criminal case and was later prosecuted for perjury. Thus, if Mr. Gupta were to shade the truth in his testimony, he would be almost certain not face to any legal consequence. Not only would extradition be extremely unlikely, but it is also unclear whether a legally effective oath can even be sworn so as to expose Mr. Gupta to punishment for perjury, were he to commit it. For these and the other reasons set forth above, Defendants request Mr. Gupta be required to testify in person.

Dated: August 20, 2024

Respectfully submitted,

| | |
|---|---|
| BRYAN CAVE LEIGHTON PAISNER LLP | BLEGEN & ASSOCIATES |
| */s/ Richard E. Finneran* | */s/ Patrick W. Blegen* |
| RICHARD E. FINNERAN | PATRICK W. BLEGEN |
| 211 North Broadway, Suite 3600 | 53 W. Jackson Boulevard |
| St. Louis, Missouri 63102 | Suite 1424 |
| Tel: (314) 259-2080 | Chicago, Illinois 60604 |
| Fax: (314) 259-2020 | (312) 957-0100 |
| *richard.finneran@bryancave.com* | *pblegen@blegenlaw.com* |
| *Attorney for Defendant Rishi Shah* | *Attorney for Defendant Shradha Agarwal* |

COTSIRILOS, TIGHE, STREICKER,
POULOS & CAMPBELL, LTD.

*/s/ Theodore T. Poulos*
Theodore T. Poulos
55 E. Monroe St., Ste. 3250
Chicago, IL 60603
(312) 263-0345
*tpoulos@cotsiriloslaw.com*

*Attorney for Defendant Brad Purdy*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon all counsel of record by operation of the Court's electronic filing system.

                   */s/ Richard E. Finneran*
                   RICHARD E. FINNERAN