UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RISHI SHAH, et al., | No. 19 CR 864<br><br>Judge Thomas M. Durkin |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' FILINGS CONCERNING RESTITUTION APPORTIONMENT**

The United States of America, by ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully submits this response to the filings on restitution apportionment made by defendants Shradha Agrawal, Brad Purdy, and Ashik Desai. Defendant Rishi Shah has not filed an allocation brief and recently indicated to the Court that he does not oppose the apportionment positions taken by his co-defendants.

On August 19, 2026, this Court entered an order finding that the investor victims in this case were owed $265,100,000 in restitution. (R. 1045.) The Court also found that certain lender victims were owed approximately $5,751,587. (*Id.*) The Court is still considering restitution owed to three additional lenders.

The issue pending before the Court is how the restitution figure should be apportioned, if at all. For the reasons set forth below, the government's position is that the Court should hold Shah liable for the entire amount due in restitution, jointly and severally with Agrawal, Purdy, and Desai. The government further believes that restitution should be apportioned so that Agrawal pays $13.7 million, Purdy pays $1,630,000, and Desai pays $1,471,563.

Under 18 U.S.C. § 3664(h), when more than one defendant has contributed to the loss, the Court "may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." The decision to apportion liability among defendants, as opposed to ordering all defendants to pay the entire amount jointly and severally, is within the Court's discretion, and it need not do so. *See, e.g.*, *United States v. Sensmeier*, 361 F.3d 982, 990 (7th Cir. 2004).

When apportioning liability among co-defendants who participated in a common scheme, some courts have entered "hybrid" restitution orders. Such orders provide that "the most significant offender may be held liable for the full amount of loss, while lesser participants are required to contribute lesser amounts." *United States v. Yalincak*, 30 F.4th 115, 124 (2d Cir. 2022); *see also*, *United States v. Clay*, 162 F.4th 757, 776 (6th Cir. 2025) ("Under [hybrid restitution] orders, the most culpable among the defendants is liable for the full amount of the loss, while the less culpable are liable for only the losses they caused."); *United States v. Shvets*, 154 F.4th 74, 88 (3d Cir. 2025) ("We now hold that 18 U.S.C. § 3664(h) allows sentencing judges to issue 'hybrid' restitution orders—i.e., orders that combine apportionment with joint and several liability."); *United States v. Trigg*, 119 F.3d 493, 501 (7th Cir. 1997) ("[A] district court may impose joint liability on multiple defendants in different amounts.").

A hybrid restitution order employs "a combination of the apportionment of liability approach while concurrently making all of the defendants jointly and severally liable." *United States v. Sheets*, 814 F.3d 256, 260 (5th Cir. 2016); *see also*, *Yalincak*, 30 F.4th at 126 ("[W]e now hold explicitly that district courts may combine apportionment of liability to limit the restitution obligation for some participants in a crime while concurrently holding other participants liable for the full amount of the loss."). In other words, the restitution obligation is not satisfied until "either a defendant has paid as much as she has been ordered to pay or the victim has been made whole." *Yalincak*, 30 F.4th at 126; *Sheets*, 814 F.3d at 261.

Here, starting with Shah, he is the most culpable defendant by a large degree given his position at Outcome Health during the fraud, his extensive involvement in the fraud scheme from its inception, and the proceeds he obtained as a result of the fraud. Also, during various post-trial proceedings, the government presented evidence that Shah at that time had assets that could be used to pay some portion of a restitution judgment. Thus, the Court should not apportion Shah's restitution liability. Instead, he should be ordered to pay the entire amount due to victims.

The remaining three defendants have filed briefs setting forth their positions on apportionment. After reviewing those filings, the government agrees that apportionment for these three defendants makes sense, as set forth below.

For Agrawal, the government agrees that she should have her restitution apportioned given her more limited culpability in the investor fraud and her economic

circumstances. However, the government disagrees with the $6.2 million restitution figure Agrawal advances in her brief. She argues that the $6.2 million figure is appropriate because it is her gain from the 2017 capital raise.

The government believes that Agrawal's restitution figure should be the $13.7 million that this Court found attributable to her as fraud proceeds for forfeiture purposes. (R. 468.) At minimum, Agrawal should be allocated at least as much as this Court found attributable to her as proceeds traceable to the fraud.

In her filing, Agrawal argues that a portion of what was included in the forfeiture judgment were funds that came from lenders that were not victims identified in the Court's restitution order. She maintains those amounts should not be ordered against her as restitution, hence the difference between the Court's $13.7 million forfeiture judgment and her request for $6.2 million.

The Court's allocation analysis, however, need not be that granular in this respect. The fact remains that Agarwal's actions contributed to the entirety of the fraud, including against lenders that may not be included in the restitution figure. And she should not be ordered to pay less in restitution than what is traceable to her from the fraud. Accordingly, the government's position is that restitution should be allocated against Agrawal in the amount of $13.7 million.

Regarding Purdy, the government disagrees that he was not as culpable in the fraud against the lenders and investors. As detailed at trial, and as summarized in the Government's Version of the Offense, during 2016, Purdy met with lenders to

obtain loans for Outcome. At that time, Purdy and Shah knowingly provided the lenders with false information about Outcome's revenue. (GV. at 15.)

Moreover, during 2016 and 2017, Purdy and Shah met with numerous investors to raise money for Outcome. During these meetings, Purdy and Shah lied to investors by telling them that Outcome had never missed an ROI guarantee on an advertising campaign, when that was not true. In the Government's Version of the Offense, the government summarized meetings Purdy had with representatives of at least two victims, Lalea Sturdy of CapitalG and Todd Cozzens of Leerink. (GV. at 16-17.)

Thus, there is no basis to allocate Purdy's restitution substantially lower because he was not as culpable in the fraud against the lenders or investors. Purdy may not have been as culpable as Shah but he bears significant culpability for those portions of the fraud scheme.

Nevertheless, the government believes that allocation for Purdy makes sense. Furthermore, the government agrees that allocating Purdy's restitution using the compensation he received while employed at Outcome is a reasonable way to do so. As set forth in the attachment to his filing, Purdy does not have the financial ability to pay a substantial restitution judgment. Therefore, the government agrees that allocating Purdy's restitution figure to $1,630,000 is appropriate under the circumstances.

Finally, regarding Desai, the government believes a similar approach makes sense although for a different reason. As detailed in Desai's filing, and as the government has argued elsewhere, Desai was less involved in the lender and investor fraud when compared to Shah or Purdy. This should be reflected in this Court's allocation decision. Thus, like Purdy, the government believes that Desai's gain from his employment at Outcome is a reasonable way to allocate his restitution figure. That amount, as set forth in Desai's brief, is $1,471,563.

In short, the government believes that Purdy and Desai should be treated similarly and the government does not oppose their requests to allocate restitution to the amounts they received as their compensation at Outcome.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: /s/ *Jason A. Yonan*
JASON A. YONAN
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-0708

Dated: October 21, 2026