UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RISHI SHAH and SHRADHA AGRAWAL | No. 19 CR 864<br><br>Judge Thomas M. Durkin |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO REVOKE BOND PENDING APPEAL**

The UNITED STATES OF AMERICA, by and through its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, and LORINDA LARYEA, Chief, White Collar and Corporate Enforcement Section, hereby files this reply in support of its motion to revoke bond pending appeal for defendants Rishi Shah and Shradha Agrawal.

As this Court knows, on August 6, 2026, the Seventh Circuit Court of Appeals affirmed defendants' convictions in this case. *See United States v. Shah, et al.*, 185 F.4th 769 (7th Cir. 2026). Following the Seventh Circuit's decision, on August 18, 2026, the government filed a motion seeking to revoke defendants' bond pending appeal. (R. 1043.)

After the government filed its motion, the parties agreed that the best course was to allow the Seventh Circuit to rule on defendants' petition for rehearing and rehearing *en banc* before the parties completed briefing the motion to revoke bond pending appeal. (R. 1044.) Accordingly, the parties requested, and the Court ordered, that defendants' response to the motion for bond pending appeal be filed 10 days after the Seventh Circuit ruled on the petition for rehearing and rehearing *en banc*. (R. 1047.)

On October 1, 2026, the Seventh Circuit denied defendants' motion for rehearing and rehearing *en banc*. *United States v. Shah, et al.*, 2026 WL 2966704 (7th Cir. Oct. 1, 2026.) Defendants then filed an unopposed motion to suspend deadlines related to the motion to revoke

bond pending appeal. (R. 1058.) In that motion, and without opposition from the government, defendants sought to suspend further briefing on the government's motion pending the Supreme Court's decision on a certiorari petition that defendants expect to file on or before December 30, 2026. (*Id.*)

This Court denied that motion on October 9, 2026, noting that under 18 U.S.C. § 3143(b)(1)(B), the Court "shall" order a defendant detained "unless" the Court finds that the appeal "raises a substantial question of law or fact likely to result in reversal [or] an order for a new trial." (R. 1061.) Thus, the Court ordered defendants to respond to the government's motion to revoke bond, which they did on October 20, 2026 (R. 1069), and ordered the government to file this reply. (R. 1071.) Oral argument on this matter is scheduled for November 23, 2026. (R. 1072.)

Before addressing the merits, the government explains why it did not oppose defendants' request to suspend briefing related to the motion to revoke bond pending appeal until the Supreme Court decided defendants' certiorari petition. After the Seventh Circuit denied the petition for rehearing and rehearing *en banc*, the undersigned Assistant United States Attorney consulted with appellate counsel in this matter. In a complex white-collar case such as this one, the Solicitor General's Office generally prefers to not revoke bond pending appeal because such motions can be appealed to the United States Supreme Court, which necessitates briefing a complex matter such as this one on a very short timeline. Weighing the resources that would go into that endeavor, the government thought it reasonable to allow defendants to remain free on bond pending appeal so long as they did not seek an extension of time from December 30, 2026, to file their certiorari petition.

That being said, the government understands the Court's reading of the statute that it "shall" order defendants remanded to custody if the statutory requirements are met. And moreover,

the government does not believe that the two issues defendants raise in their response are substantial issues likely to result in reversal or a new trial.

In their response, defendants again argue that their Sixth Amendment right to counsel claim is substantial and likely to result in reversal or a new trial. This issue has been briefed extensively, and the Court previously found that it warranted bond pending appeal for defendants. (R. 882.)

The circumstances, however, have now changed, and the Sixth Amendment claim is no longer a substantial issue because it has been heard and rejected by this Court, a panel of the Seventh Circuit, and review *en banc* has been rejected. These rulings, without any dissent, establish that the issue is not substantial and is unlikely to result in reversal or a new trial. *See, e.g.*, *United States v. Krzyske*, 857 F.2d 1089, 1090-92 (6th Cir. 1988) ("Our decision affirming the district court's judgment and sustaining the convictions . . . and in denying the petition for rehearing or rehearing en banc settled the chief issue . . . in favor of the government. Unless or until the Supreme Court should take some action to the contrary, and statistical studies have shown slight likelihood that the Court will undertake such action on petitions for certiorari, there is no logical reason for [defendant] to remain free."); *United States v. Zimny*, 279 F. Supp. 3d 367, 367-68 (D. Mass. 2017) (no substantial issue remained after court of appeals affirmed); *United States v. Derewal*, No. CRIM. 88-98, 1995 WL 672821, at *2 (E.D. Pa. Nov. 8, 1995) (finding no substantial issue after a "unanimous panel of the Third Circuit affirmed" and denied petition for rehearing *en banc*); *United States v. Sullivan*, 631 F. Supp. 1539, 1540-41 (E.D. Pa. 1986) ("In view of the decision of the court of appeals in this matter, I find that there is no substantial question for further appeal, based on my review of the appellate briefs submitted by defense counsel.")

This is not to say that there are no circumstances in which bond should be granted where a circuit court has affirmed a district court's opinion and denied *en banc* review. While there may

be such cases, this is not one of them. In particular, and as previously noted, this Court largely applied existing law to facts that were developed at evidentiary hearings. That makes certiorari on defendants' Sixth Amendment claim unlikely.

Nor did the government suggest in its motion that defendants' bond should be revoked only because of the statistical unlikelihood of certiorari being granted. Given that the statute allows for bond pending certiorari review, the statistical unlikelihood is certainly not an automatic disqualifier. *See United States v. Dicaro*, No. 83-cr-5, 1985 WL 3587, at*1 (N.D. Ill. 1985) (referring to statistical improbability of certiorari being granted as an insignificant factor but still revoking defendant's bonds after decision from the court of appeals because defendant could not sustain his burden under the statute). But at the same time, it cannot be ignored when the question before the Court is the likelihood of reversal or a new trial. *See Krzyske*, 857 F.2d at 1090-92. All else being equal, that probability is low given the limited number of cases that are granted certiorari by the Supreme Court.

Weighing all the above, the Sixth Amendment issue should no longer be considered substantial and does not support granting defendants bond pending review of their certiorari petition.

The second issue defendants identify as substantial and likely to result in reversal or a new trial concerns the proper standard for assessing the harmlessness of nonconstitutional errors. This relates to the government admitting the entirety of Jason Ketchum's and Ashik Desai's grand jury statements into evidence at trial as prior consistent statements under Federal Rule of Evidence 801(d)(1)(B). In its opinion, the Seventh Circuit found that to be harmless error. *Shah*, 185 F.4th at 792-95. According to defendants, in doing so, the Seventh Circuit improperly placed the harmlessness burden onto them and used a standard that conflicts with other circuits.

Federal Rule of Criminal Procedure 52(a) provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Errors of a nonconstitutional nature, such as in this case, are considered harmless unless they "had a substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). Necessarily encompassed within that standard is an evaluation of the strength of the evidence, as the Supreme Court has long recognized. *See Neder v. United States*, 527 U.S. 1, 17 (1999) ("Where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by *overwhelming* evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.") (emphasis added).

Nothing from the Seventh Circuit's opinion conflicts in any way with Supreme Court authority or with other circuits. To start with, the Seventh Circuit's opinion does not reflect that the harmlessness standard was shifted to defendants. Instead, the Seventh Circuit noted that "[t]he test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *Shah*, 185 F.4th at 793 (quoting *United States v. Medrano*, 83 F.4th 1073, 1077 (7th Cir. 2023)). The court further explained that "[p]ut another way, 'an evidentiary error is harmless if it did not have a substantial influence on the verdict." *Id.* (quoting *Medrano*, 83 F.4th at 1078). At no point did the Court fault defendants for not meeting that standard.

Instead, the court applied the relevant standard to the existing record. For Shah, the analysis focused on the "overwhelming" nature of the evidence against him. *Id.* at 793. The jury heard evidence about Shah's role in the fraud "in detail from Outcome's clients, investors, and other former employees." *Id.* The government also presented "mounds" of documents exposing the

fraud. *Id.* And Shah "was at the epicenter of all of this and more, including making false statements to Deloitte during its audits to secure funding." *Id.* This harmless error analysis would survive under any standard.

Though Agrawal was a closer call, the court nonetheless found that it could not "conclude that allowing the jury to hear the prior testimony substantially influenced the verdict." *Id.* at 794. The court specifically noted that as part of its analysis, it needed to consider the "effect" of the improperly admitted grand jury testimony. *Id.*

As the Seventh Circuit found, the grand jury testimony did not substantially influence the verdict against Agrawal because Desai said little about Agarwal at trial and Ketchum "turned out to be a thoroughly ineffective witness." *Id.* In fact, the court noted that "it is hard for us to see Ketchum's grand jury testimony as adding much, if anything, to the government's case against Agarwal." *Id.*

The court also considered the strength of the evidence against Agarwal. Though that evidence may not have been as substantial as against Shah, it included Agrawal's knowledge of overstated inventory levels being presented to clients, her direction of an employee to use projected inventory, and her awareness of deltas. *Id.* at 794-95. This evidence, according to the court, showed that Agrawal knew of the fraud and took affirmative steps to further or hide it. *Id*.

Thus, the court appropriately considered the effect of the improperly admitted evidence and found that the admission of the grand jury transcripts did not have a substantial influence on the verdict given the strength of the other evidence against both defendants and the minimal role the transcripts played in relation to Agrawal.

Defendants complain that the Seventh Circuit's standard conflicts with the First, Second, and Third Circuits. According to defendants, those circuits find nonconstitutional errors harmless

"only when there is a 'high probability' that the error did not have more than a 'very slight effect' on the jury." (R. 1069 at 10.) But there is no material difference between that standard and what the Seventh Circuit did in this case. What defendants point to are nothing more than differences in phrasing that do not constitute a circuit split.

Here, the Seventh Circuit necessarily found that there was a high probability that the error was immaterial, or phrased in defendants' terms, that it had a "very slight effect" on the jury. For Shah, that was based on the strength of the evidence, which the Seventh Circuit accurately described as "overwhelming." As to Agrawal, it was based both on the strength of the evidence and the negligible effect of the error.

Thus, the Seventh Circuit considered both the effect of the error and the strength of the other evidence, which is entirely consistent with Supreme Court precedent, even for constitutional errors. *See Neder*, 527 U.S. at 17; *Schneble v. Florida*, 405 U.S. 427, 430 (1972) ("In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error."); *Harrington v. California*, 395 U.S. 250, 254 (1969) (harmless error where evidence against defendant was "so overwhelming").

Cases from the First, Second, and Third Circuits do the same while focusing on the strength of the evidence. *See, e.g.*, *United States v. Curley*, 639 F.3d 50, 58 (2d Cir. 2011) (listing factors that bear on harmless error inquiry and noting that the "most critical factor . . . is the strength of the government's case."); *United States v. Christie*, 624 F.3d 558, 571-72 (3d Cir. 2010) ("[W]e nevertheless conclude that the error was harmless given the truly overwhelming quantity of legitimate evidence against [defendant] . . . ."); *United States v. Hicks*, 575 F.3d 130, 143 (1st Cir. 2009) ("Even if there was an error in the admission of the three prior felony convictions . . . that

error was harmless in light of the other overwhelming evidence against appellate . . . ."), cert denied, 558 U.S. 1034 (2009). This weighs strongly against defendants' argument that a significant circuit split exists on this issue.

Nothing about the Supreme Court previously granting, and then dismissing, certiorari in *United States v. Vazquez* should be viewed as helpful to defendants' cause. *See Vasquez v. United States*, 566 U.S. 376 (2012) (dismissing writ of certiorari as "improvidently granted"). The Seventh Circuit's opinion in *Vazquez* articulated the harmless error test as whether "in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *United States v. Vazquez*, 635 F.3d 889, 898 (7th Cir. 2011).

Defendants speculate that certiorari was dismissed in *Vazquez* because that case "did not in fact present the issue on which certiorari had been sought." (R. 1069 at 10.) But the Supreme Court could have just as easily found that there was no material circuit split on this issue to begin with, as the government has noted above. Indeed, the fact that certiorari has not been granted on this issue in the 14 years since *Vazquez* certainly suggests that no significant circuit split exists. Notably on this point, defendants cite no case in which a court of appeals has identified a split amongst the circuits on the harmless error standard.

Nor do defendants clarify why this case, as opposed to *Vazquez* or any of the other harmless error cases from the last 14 years, is better equipped to tackle any purported circuit split. What defendants really complain about is the Seventh Circuit's application of the harmless error standard to their case, which is not an issue that the Supreme Court will take up on certiorari. Thus, this case should be viewed as poor fit to correct any circuit split, even if one existed.

For these reasons, and those expressed in the government's motion to revoke bond pending appeal, defendants have not met the relevant standard under 18 U.S.C. § 3143(b) and, accordingly,

this Court should revoke their bond and set report dates for them to begin serving their respective sentences.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/ Jason A. Yonan*
JASON A. YONAN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-0708

Dated: October 27, 2026