**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RISHI SHAH, et al.,<br>(SHRADHA AGARWAL)<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 19 CR 864<br><br>Judge Thomas M. Durkin |

**DEFENDANT AGARWAL'S REPLY IN SUPPORT OF HER MEMORANDUM**
**ON THE ALLOCATION OF RESTITUTION UNDER 18 U.S.C. § 3664(h)**

Defendant Shradha Agarwal, through counsel, respectfully submits this reply to the Government's Response to Defendants' Filings Concerning Restitution Apportionment (R. 1070).

## INTRODUCTION

The parties are in agreement that Ms. Agarwal's restitution should be apportioned. R. 1070 at 3–4. And the government has told the Court that it intends to recommend that the assets already forfeited by Ms. Agarwal, at least $13.7 million, be restored to the victims and offset her restitution. R. 480 (June 16, 2023 Tr.) at 22:6–16; R. 850 (Agarwal Sent. Tr.) at 63–64. Restoration of the Agarwal forfeited assets would likely satisfy the restitution obligation proposed by the defense ($6.2 million) or the government ($13.7 million).

The issues remaining are: which restitution figure to select and what to do in a situation where restoration is anticipated but has not yet happened? To ensure that the victims receive restitution to which they are entitled, that Ms. Agarwal does not pay twice, and that Ms. Agarwal's forfeiture is provided to the victims and properly offsets her restitution, the defense position is that

the Court impose the $6.2 million restitution figure but also suspend Ms. Agarwal's payment of restitution until the restoration issue is resolved.

## I. The Court Should Impose $6.2 Million in Restitution for Ms. Agarwal

The government argues that $13.7 million is the appropriate restitution figure because Ms. Agarwal "should not be ordered to pay less in restitution than what is traceable to her from the fraud." R. 1070 at 4. The problem with this method of calculating restitution is that $7.5 million of the forfeited amount came from lenders who are not victims for restitution purposes. R. 480 (June 16, 2023 Tr.) at 13:21–14:4; R. 1045 at 38. The government argues that the restitution calculation need not be that "granular," but restitution and forfeiture are not the same thing. And, without assurance that the amount Ms. Agarwal forfeited will actually be restored as restitution, being granular about the restitution calculation is the appropriate route. If restoration does not occur, the government's proposal would leave Ms. Agarwal with a restitution obligation measured partly by gains from a transaction that produced no restitution victim.

To be clear, Ms. Agarwal has always hoped and expected that all the funds she forfeited would go to the victims. She agreed, without opposition, to forfeit the full $13.7 million requested. R. 468. She has never sought the return of any forfeited property, and she asked that her share of over-restrained assets go to the victims as well. R. 850 (Agarwal Sent. Tr.) at 63–64; R. 1055 at 14 n.4. The government told the Court it intended to recommend that anything obtained from Ms. Agarwal be applied to restitution. R. 480 at 22:6–16. And the Court stated: "I certainly wouldn't order double restitution. If I ordered restitution, it would be offset by any forfeited funds that the government applies." R. 741 (June 14, 2023 Tr.) at 5:25–6:9.

A $6.2 million cap does not stand in the way of the full $13.7 million forfeited from Ms. Agarwal from being restored to victims. The cap defines Ms. Agarwal's personal restitution

obligation. As requested in Ms. Agarwal's apportionment request, restored funds from her forfeiture would be credited first against *her restitution* obligation, and any excess would still reach victims and reduce the remaining loss for which her codefendants are liable. The dispute over the restitution amount therefore matters only if restoration does not occur. In that event, Ms. Agarwal would have surrendered $13.7 million in forfeiture with no restitution to the victims, and no credit against her restitution judgment. That situation would bear little relationship to her level of contribution to the loss or her economic circumstances. 18 U.S.C. § 3664(h); R. 850 at 102:5–6.

If restoration had already occurred, Ms. Agarwal would have no objection to the $13.7 million restitution amount requested by the government. But, because a restitution order may be modified only through the mechanisms listed in 18 U.S.C. § 3664(o), none of which permits a later re-apportionment of liability if restoration does not occur, the Court cannot revisit Ms. Agarwal's share if the government's intent does not come to fruition for some reason.

## II. Payment Should Be Suspended Until the Restoration Decision Is Made

Restitution is typically ordered payable immediately "unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). The Court sets the payment schedule in light of the defendant's financial resources, and that schedule need not begin at once. 18 U.S.C. § 3664(f)(2); *see also United States v. Sawyer*, 521 F.3d 792, 796 (7th Cir. 2008) (holding that a payment schedule need not begin until the defendant's release from prison). Here, ordering restitution payable immediately, or on a short schedule, creates a risk that Ms. Agarwal would pay now toward an obligation that restoration later satisfies in full. And Ms. Agarwal has had no earned income since January 2018, has been drawing down her savings, and has already been found unable to pay a fine. R. 1055 at 7; R. 850 at 102:5–6.

The defense has found little case law addressing this conundrum. The defense did uncover a district court opinion from the Western District of New York addressing this same problem: a $5.5 million restitution obligation that "may ultimately largely be satisfied by assets forfeited by Defendants," where the government was preparing to ask the Department's Money Laundering and Asset Recovery Section to apply those assets to restitution. *United States v. Wen*, No. 6:17-cr-06173, Dkt. 95 (W.D.N.Y. Feb. 28, 2019) (attached). In *Wen*, the court granted a defense motion, filed after sentencing and after restitution had been ordered, to suspend restitution payments. The government did not oppose, and the court noted that the defendants had limited resources. The court in *Wen* suspended payment of restitution "until a final amount of forfeiture is determined and the remission petitions are resolved." *Id.*

Unlike in *Wen*, the issue is known now, so the Court can address it in the judgment rather than on a later motion. The amount of the forfeiture judgment has also already been determined. All that remains is for the government's expressed intent to restore forfeited funds to victims to come to fruition. Ms. Agarwal therefore asks that the judgment provide that:

(1) payment of her restitution obligation is suspended until the government reports to the Court that the Department of Justice has decided whether to apply her forfeited property to restitution, and the amount applied;

(2) any forfeited funds applied to restitution are credited first against her apportioned obligation; and

(3) schedule the filing of a government status report regarding the restoration of Ms. Agarwal's forfeited property.

Suspending payment would ensure that there is no "double restitution" as the Court intended. The Court would also retain authority to revisit the payment terms once the restoration decision is known. Under 18 U.S.C. § 3664(k), the Court may "adjust the payment schedule . . . as the interests of justice require." *See United States v. Sweatt*, 85 F.4th 1240, 1242 (7th Cir. 2023);

*Wen*, Dkt. 95 (relying on § 3664(k)). If restoration is granted, the amount the government seeks from Ms. Agarwal will be satisfied. If for some unforeseen reason restoration does not occur, § 3664(k) would allow the Court to adjust the payment terms, including by ordering nominal payments under § 3664(f)(3)(B).

**CONCLUSION**

For these reasons and those in her opening memorandum, Ms. Agarwal respectfully requests that the Court apportion her investor restitution at $6,200,000, credit any forfeited funds restored to victims first against that obligation, and suspend payment until the government reports the Department of Justice's restoration decision.

Respectfully submitted,

s/Patrick W. Blegen
PATRICK W. BLEGEN, Attorney
for Shradha Agarwal

BLEGEN & ASSOCIATES
53 W. Jackson Boulevard, Suite 1424
Chicago, Illinois 60604
(312) 957-0100